# DENNIS D. SMITH *v.* STATE OF MARYLAND

[No. 403, September Term, 1972.]

*Decided February 26, 1973.*

218

The cause was argued before ORTH, C. J., and POWERS and SCANLAN, JJ.*

*C. Eugene Schmidt* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton*

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, May 15, 1973.

*B. Allen, State's Attorney for Baltimore City,* and *Joseph Lyons, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

This case concerns the right to a trial by jury of a person charged with offenses under the exclusive original jurisdiction of the District Court of Maryland.

## I

"Jury trial came to America with English colonists, and received strong support from them." *Duncan v. Louisiana,* 391 U. S. 145, 152. "To the Englishman of the fourteenth century . . . it had already become an 'ancient prerogative' to have twelve laymen stand between him and the vengeance of the king in a criminal prosecution of any kind, whether the charge were tippling at the inn or murder." Frankfurter & Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv. L. Rev. 917 (1926) at 923 (hereinafter referred to as Frankfurter & Corcoran).[1] Blackstone considered jury trial to be a strong barrier between liberties of the people and the prerogative of the Crown. 4 Blackstone, *Commentaries on the Laws of England* 349. The colonists recognized trial by jury as preventing oppression by the Government, see *Williams v. Florida,* 399 U. S. 78, 100, and deeply resented royal interference with it. This resentment is apparent in resolutions adopted by the First Congress of the American Colonists [The Stamp Act Congress], declarations by the First Continental Congress, and statements in the Declaration of Independence. The constitutions adopted

---

1. Frankfurter & Corcoran believed that trial by jury did not derive from Magna Carta. "That the modern institution of trial by jury derives from Magna Carta is one of the most revered of legal fables. The belief is an obstinate example of 'the inevitable habit of reading later ideas into earlier institutions.'" At 922-923.

by the original states guaranteed jury trial.[2] The Constitution of Maryland was framed "in free and full Convention assembled" which met at Annapolis 14 August 1776 and completed its labors 11 November 1776.[3] The delegates, "taking into [their] most serious consideration the best means of establishing a good Constitution in this State, for the sure foundation and more permanent security thereof", assented to and passed a Declaration of Rights. As to trial by jury, they declared:

"III.   That the inhabitants of Maryland are entitled to the common law of England, and the trial by jury, according to the course of that law, . . .

"XIX.   That, in all criminal prosecutions, every man hath a right . . . to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

"XXI.   That no freeman ought to be taken, or imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers, or by the law of the land."

The declarations with respect to jury trial remained intact as Articles 3, 19 and 21 in the Declaration of Rights of the Constitution of Maryland of 1851.[4] In the Declaration of Rights of the Constitution of 1867, still in effect,

---

2. "Also, the constitution of every State entering the Union thereafter in one form or another protected the right to jury trial in criminal cases." *Duncan v. Louisiana, supra,* at 153.

3. The Constitution of 1776 was not submitted to the people.

4. Except that a proviso was added to Article 21: "Provided that nothing in this article shall be so construed as to prevent the legislature from passing all such laws for the government, regulation, and disposition of the free colored population of this State as they may deem necessary."

the jury trial provisions were designated respectively as Articles 5, 21 and 23.[5]

The concern for the right to jury trial was also evident with respect to the federal government of the new United States of America as proposed after separation of the colonies. The Constitution of the United States, "Done in Convention by the Unanimous Consent of the States present [6] the Seventeenth Day of September in the Year of our Lord one thousand seven hundred and Eighty-seven and of the Independence of the United States of America the Twelfth", provided in Article III, Section 2: "The Trial of All Crimes, except in Cases of Impeachment, shall be by jury; . . ." [7] The first ten amendments to the Constitution were proposed by Congress on 25 September 1789, and declared ratified on 15 December 1791. Article VI of the amendments guaranteed that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . ." [8]

It has been the constant course of litigation in England, for centuries past, to confer summary jurisdiction upon justices of the peace for the trial and conviction of parties for minor and statutory police offenses. *State v. Glenn*, 54 Md. 572, 600. Blackstone found that criminal proceedings were divisible into two kinds: summary and regular. "By a *summary* proceeding I mean principally

---

5. The only other changes were as to Art. 23, formerly Art. 21. "Freeman" was changed to "man", and the proviso was omitted.

6. New Hampshire, Massachusetts, Connecticut, New York, New Jersey, Pennsylvania, Delaware, Maryland, Virginia, North Carolina, South Carolina and Georgia.

7. The Constitution of the United States became effective 4 March 1789, the day fixed for commencement of the operations of the government, by virtue of its ratification by the conventions of eleven states.

8. Article III, section 2 of the Constitution of the United States is applicable only to "the judicial Power of the United States." Frankfurter & Corcoran concluded, at 968-975, after a careful historical analysis, that the phrase "all criminal prosecutions" in the amendment has the same meaning as "trial of all crimes" in the Constitution proper, giving no new scope to trial by jury. See *Patton v. United States*, 281 U. S. 276.

such as is directed by several Acts of Parliament (for the common law is a stranger to it, unless in the case of contempts) for the conviction of offenders, and the inflicting of certain penalties created by those Acts of Parliament. In these there is no intervention of a jury, but the party accused is acquitted or condemned by the suffrage of such person only as the statute has appointed for his judge. An institution designed professedly for the greater ease of the subject, by doing him speedy justice, and by not harassing the freeholders with frequent and troublesome attendances to try every minute offence." 4 Blackstone, *Commentaries on the Laws of England* 280-281.[9] Thus it was that a great number of offenses were disposed of in justices' courts by summary trials, prompted by a constant effort to adjust the machinery of jury trial with the volumes of litigation which came before the Sessions. There was no unifying consideration as to the type of criminal offense subjected to summary trial, although the great majority of instances were aptly characterized as "petty" violations. See Frankfurter & Corcoran, 922-934. The colonists in America, facing problems comparable to those experienced by England, and having brought with them legal traditions of which summary jurisdiction by justices of the peace was a familiar part, "resorted to summary jurisdiction for minor offenses with full loyalty to their conception of the Englishman's right to trial by jury." *Id.*, at 936. In Frankfurter and Corcoran the printed record of seven of the colonies, of which Maryland was one, was examined to ascertain evidence as to their use of summary procedure. The record showed that those colonies "acted on the conviction that the much-cherished jury procedure was not imperative for small offenses", and that "the practice of summary procedure, pursued in varying measure by the different colonies, persisted unchallenged

---

9. The extent to which summary proceeding was utilized is shown by Blackstone's caveat: "But it has of late been so far extended, as, if a check be not timely given, to threaten the disuse of our admirable and truly English trial by jury, unless only in capital cases." *Ibid.*

through the acrimonious controversy with the Crown over the denial of the jury in admiralty courts, through the framing of the jury clauses in state constitutions, and through the enactment of the jury clauses in the Federal Constitution." *Id.*, at 937.[10]

Our Court of Appeals recognized that not every criminal prosecution is within the ambit of the provisions of the Constitution of Maryland relating to trial by jury. *Maryland Constitutional Law*, Niles, 42-44 (1915). It has held the various acts providing summary proceedings for certain offenses to be constitutional. In *State v. Glenn, supra*, the court, after tracing the course of English justice, noted, at 602: "The exercise of the summary jurisdiction, therefore, is not, in England at least, regarded as being in violation of the fundamental guarantees of the rights and liberties of the people; and the personal liberty of the subject at this day is as well and jealously protected in England as in any other country, where the principles of *Magna Charta* and of the common law are enforced." It observed: "With us there has been no time since the earliest days of the colony that the summary jurisdiction by justices of the peace has not been exercised, in one form or another, over parties offending against the peace and good order of society. This jurisdiction has been exercised, some-

---

10. An Act "for the Authority of Justices of the Peace" of the second Colonial Assembly of Maryland in 1638 adopted wholesale the English practice of summary powers for magistrates. 1 Archives of Maryland 52. The offenses so punishable included threatening to harm the person or goods of another, residing among Indians, swearing, drunkenness, fornication, adultery, refusal to care properly for servants, labor on Sabbath or holy days, eating flesh in Lent, raising an alarm without cause by shooting of guns, fishing with seines or other unlawful nets. There followed in the colonial period a steady succession of laws for the summary trial of offenses. They covered disorderly conduct, promotion of public health, safety and convenience, regulation of vagrancy and slaves and servants, regulation of the tobacco trade and other trades and miscellaneous matters such as prohibiting fishing with spears and lights, the failure of the county clerk to perform his duties, and refusal of the mother of a bastard child to discover the father. By various Acts from 1776 through 1789 the practice continued under the State government in the same general areas. See Frankfurter & Corcoran, Appendix C, 999-1010.

times under British statutes in force here, but more generally under statutes passed by the Colonial and State Legislatures." *Ibid.* It stated: "The framers of all our Constitutions were well acquainted with the history of legislation in regard to the exercise of summary jurisdiction, both in England and in this State, and of the needs of society for summary protection against the vicious, idle, vagrant and disorderly portion of its members; and it is difficult to suppose that, by any provision incorporated in those instruments, it was intended to nullify previous legislation, altogether interdict the use of a long and well-established summary jurisdiction for the protection of society, and thus radically change and seriously impair the whole police system of the State." *Id.,* at 604-605. It construed the constitutional jury trial provisions, at 605-606: "The meaning of the provisions of the Declaration of Rights would seem to be plain. . . . [W]hen it is declared that the party is entitled to a speedy trial by an impartial jury, that must be understood as referring to such crimes and accusations as have, by the regular course of the law and the established modes of procedure, as theretofore practiced, been the subjects of jury trial. It could never have been intended to embrace every species of accusation involving either criminal or penal consequences. . . . The design, manifestly, of the provisions of the Declaration of Rights to which we have referred, was simply to declare and make firm the pre-existing rights of the people, as those rights had been established by usage and the settled course of law." *Glenn* was quoted and followed in *Danner v. State,* 89 Md. 220, which then discussed the types of offenses which commanded a jury trial and those which did not. "The right to demand a jury trial, being as we have thus seen guaranteed only to such crimes and accusations as have by the regular course of the law and established mode of procedure as theretofore practiced, it becomes necessary to inquire as to what class of offences entitle the party to its enjoyment. It is clear that it cannot be demanded in many minor offences. These could always

be reached by summary proceedings. *State v. Glenn (supra)*; but it is difficult to define with precision the class of cases that could be so tried. It may, however, be stated as a general rule that for any criminal offence for which a person is liable to infamous punishment, a trial by jury cannot be denied him." 89 Md. at 226. The Court held that confinement in the penitentiary was infamous punishment. In *Lancaster v. State*, 90 Md. 211, 215-216, the Court asserted: "There can be no question since the decision of this Court in the case of *State v. Glenn*, 54 Md. 599, and *Danner v. State*, 89 Md. 220, that the Legislature can, under the provisions of the Constitution of this State, confer summary jurisdiction upon justices of the peace to try persons for assaults and batteries." See *State v. Ward*, 95 Md. 118; *State v. Loden*, 117 Md. 373; *Norwood v. Wiseman*, 141 Md. 696.

Such was the status of the law in Maryland until 1968. It was believed that the right to jury trial in criminal causes flowed from provisions in the Declaration of Rights of the Maryland Constitution and that the federal constitution did not demand the use of jury trials in state criminal proceedings. *Bristow v. State*, 242 Md. 283, 289. Even so, there seems to be no real distinction between the right as bestowed by the State constitution and the right as bestowed by the federal constitution. "Certain it is", concluded Frankfurter & Corcoran, at 969, "that the framers [of the federal constitution] did not mean to provide for jury trial in criminal cases under the new government beyond the established practice in their various states." *Duncan v. Louisiana*, 391 U. S. 145, decided 20 May 1968, held that the right to jury trial extended by the Sixth Amendment with respect to federal criminal proceedings is also protected against state action. "Because we believe that trial by jury in criminal cases is fundamental to the American scheme of justice, we hold that the Fourteenth Amendment guarantees right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee." 391 U. S. at 149. The

right of jury trial guaranteed by the Sixth Amendment qualifies for protection under the Due Process Clause of the Fourteenth Amendment "and must therefore be respected by the States." *Id.,* at 156. Thus the federal constitutional guarantee is impressed upon Maryland, and we are obliged to follow it as the Supreme Court has construed it.[11]

Having determined that the right to jury trial guaranteed by the federal constitution was applicable to state criminal prosecution, the Court addressed itself to the extent of the right.[12] Looking to the past, it saw that

11. In *State v. Zimmerman,* 261 Md. 11, the Court of Appeals quoted at length from the opinion of Bond, C. J., in *Rose v. State,* 177 Md. 577 (1940) and his article entitled "The Maryland Practice of Trying Criminal Cases by Judges Alone, Without Juries," in 11 A.B.A.J. 699 (1925). It was stated in *Rose,* at 581: "Strictly speaking, there is no waiver of a requirement of jury trial," and the *Rose* opinion seemed to suggest that in Maryland the right to a jury trial and the right to a court trial are two equal rights. Of course, both Judge Bond's article and opinion were written long before the decision in *Duncan,* which told us that the federal constitutional provision guaranteeing jury trial applied to state criminal prosecutions. We do not construe *State v. Zimmerman* as indicating that an accused must "elect" a jury trial or that his right to a jury trial is lost by the *mere* election of a court trial. An accused comes to trial cloaked in the Sixth Amendment right to be tried by a jury, and he may lose that right only upon a waiver of it in the constitutional sense.

We are aware that Maryland Rule 741, as rewritten effective 1 September 1971, now speaks in terms of an "election" between a court trial and jury trial rather than a "waiver" of a jury trial. The Rule must be considered in the light of the Supreme Court's construction of the Sixth Amendment jury trial provision. So considered, we think it clear that the "election" applies only when the accused is entitled to a jury trial, and, when he is so entitled, the right is lost only by a constitutionally effective waiver. We point out that the Supreme Court said in *Duncan,* at 158, that it held no constitutional doubts about the practice, common in both federal and state courts, of accepting *waivers* of jury trial.

This is not to say that a court trial may not be as equally attractive, or more attractive, to an accused than a jury trial or that a court trial is in any way "a second class mode of trial." See *Miller v. Warden,* 16 Md. App. 614. The court trial plays a most important part in the orderly and effective administration of justice in this State.

12. In so holding the Court was expressly aware of prior cases decided by it in which the prevailing opinion contained statements contrary to its holding in *Duncan.* It cited *Maxwell v. Dow,* 176 U. S. 581; *Palko v. Connecticut,* 302 U. S. 319; *Snyder v. Massachusetts,* 291 U. S. 97, particularly relied on in Louisiana's argument. It found the contrary statements to be dicta and rejected "the prior dicta regarding jury trial in criminal cases." 391 U. S. at 155.

"[s]o-called petty offenses were tried without juries both in England and in the Colonies and have always been held to be exempt from the otherwise comprehensive language of the Sixth Amendment's jury trial provisions." *Duncan* at 160. It found "no substantial evidence that the Framers intended to depart from this established common-law practice." *Ibid.* It noted that "the possible consequences to defendants from convictions for petty offenses have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive non-jury adjudications. These same considerations compel the same result under the Fourteenth Amendment." *Ibid.* It concluded: "It is doubtless true that there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States." *Id.*, at 159. It held "no constitutional doubts" about the practice of prosecuting petty crimes without extending a right to jury trial. *Id.*, at 158.

Necessarily, the boundaries of the petty offense category, which the Court in *Duncan* thought had always been "ill-defined, if not ambulatory", must be ascertained. It said, at 160:

> "In the absence of an explicit constitutional provision, the definitional task necessarily falls on the courts, which must either pass upon the validity of legislative attempts to identify those petty offenses, which are exempt from jury trial or, where the legislature has not addressed itself to the problem, themselves face the question in the first instance. In either case it is necessary to draw a line in the spectrum of crime, separating petty from serious infractions."

The Court, however, refused to give a precise definition of a petty crime. "We need not, however, settle in this

case the exact location of the line between petty offenses and serious crimes." *Id.*, at 161. It did provide some guidelines. "Crimes carrying possible penalties up to six months do not require a jury trial if they otherwise qualify as petty offenses", *id.*, at 159, citing *Cheff v. Schnackenberg*, 384 U. S. 373. The Court observed that in determining whether the length of the authorized prison term or the seriousness of other punishment is enough in itself to require a jury trial, there should be reference "to objective criteria, chiefly the existing laws and practices in the Nation," *id.*, at 161. It then referred to the federal system in which petty offenses are defined by 18 U.S.C. § 1, as those punishable by no more than six months in prison and a $500 fine. *Ibid.* And it made clear that in any event "a crime punishable by two years in prison is, based on past and contemporary standards in this country, a serious crime and not a petty offense." *Id.*, at 162. See *Williams v. Florida,* 399 U. S. 78; *Frank v. United States,* 395 U. S. 147; *Dyke v. Taylor Implement Mfg. Co.,* 391 U. S. 216; *Bloom v. Illinois,* 391 U. S. 194. In *Baldwin v. New York,* 399 U. S. 66, the Court went a step further. It accepted the task before it as "The essential if not wholly satisfactory one . . . of determining the line between 'petty' and 'serious' for the purposes of the Sixth Amendment right to jury trial." At 68. It concluded, at 69, "that no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized." [13]

---

13. The decisions of the Supreme Court have looked to both the nature of the offense itself, *District of Columbia v. Colts,* 282 U. S. 63, as well as the maximum potential sentence, *Duncan v. Louisiana, supra,* in determining whether a particular offense was so serious as to require a jury trial. *Baldwin* decided only that a potential sentence in excess of six months' imprisonment is sufficiently severe by itself to take the offense out of the category of "petty." 399 U. S. 69, n. 6.

In *Argersinger v. Hamlin,* 407 U. S. 25, the Court made clear that the constitutional right to jury trial and the constitutional right to the assistance of counsel did not have common ancestors. It pointed out that the various opinions in *Baldwin* made plain that "the right to trial by jury has a different genealogy and is brigaded with a system of trial to a judge alone." 407 U. S. at 29. It expressly rejected the premise "that since prosecutions for

This Court has used the "six months, $500 fine" criterion in deciding cases before it. *In re Kinlein,* 15 Md. App. 625; *Staten v. State,* 13 Md. App. 425; *In re Martin,* 10 Md. App. 385.

## II

With respect to the trial of criminal causes originating in the circuit court of a county or the Criminal Court of Baltimore, there is no statutory standard prescribing the line between "petty" and "serious" other than the penalty authorized for a particular crime or offense. By the maximum penalty authorized the legislature has included within the definition of the crime itself a judgment about the seriousness of the offense. *Frank v. United States, supra,* at 149. In such cases, the *Duncan-Baldwin* test applies, namely, for purposes of right to trial by jury, the offense is petty where imprisonment for no more than six months or fine of not more than $500 is authorized. Maryland Rule 741, providing that "An accused may elect to be tried by jury or by the court", must be read in this light.[14] It does not entitle an accused to a jury trial in all criminal proceedings, but only in those in which he has the constitutional right to jury trial.

On the other hand, there is a statutory prescription of the right to jury trial with respect to offenses within the jurisdiction of the District Court. See Code, Art. 26, § 145 (b). In every such case brought in the District Court "the defendant shall have a right at any time prior to trial to demand a trial by jury if the punishment for the particular offense with which he is charged permits imprisonment for a period in excess of 3 months. If a right

---

crimes punishable by imprisonment for less than six months may be tried without a jury, they may also be tried without a lawyer." *Id.,* at 30-31. The holding in *Argersinger* was "that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.,* at 37.

14. Rule 741 applies to criminal causes, Rule 1 a 2, in the circuit court of a county and the Criminal Court of Baltimore, Rule 5 i.

to jury trial exists and such a trial is demanded by the defendant the matter shall be removed for trial to the circuit court in the county in which the alleged offense occurred or to the Criminal Court of Baltimore if the alleged offense occurred in that city." Code, Art. 26, § 145 (b) (5) (ii).[15] The result is that as to any criminal or traffic case within the jurisdiction of the District Court, be it a case over which that Court has exclusive original jurisdiction or a case over which that Court has concurrent jurisdiction with a circuit court or the Criminal Court of Baltimore, the accused is entitled to jury trial when the authorized sentence is in excess of 3 months. This is so whether the case originated in the District Court and was removed by demand for jury trial, or whether, when subject to concurrent jurisdiction, originated in the Circuit Court or Criminal Court of Baltimore. And this is so, despite the fact that as to cases not within the jurisdiction of the District Court, an accused is entitled to a jury trial only if the sentence authorized is imprisonment in excess of 6 months or a fine in excess of $500.[16]

---

15. "The State may not demand a jury trial in any criminal or traffic case." *Ibid.*
We do not know the reason for drawing the line at 3 months. Such period, as we have seen, is not constitutionally required.

16. A "serious crime" is defined in Code, Art. 27A (Public Defender), § 2.(h) as:

"(1) A felony;

"(2) A misdemeanor or offense, the penalty for which involves the possibility of confinement for more than three months or a fine of more than $500, or any other offense where, in the opinion of the court, either the complexity of the matter, or the youth, inexperience, or mental capacity of the accused, may require representation of the accused by an attorney; and

"(3) An act which except for the age of the person involved, would otherwise be a serious crime."

These provisions apply only with respect to representation by an attorney and not to right to jury trial. See Code, Art. 27A, § 4; Maryland Rule 719 b 2, as amended, effective 1 June 1972; M.D.R. 719. But see *Argersinger v. Hamlin, supra,* and note 13, *supra.*

M.D.R. 702 h, applicable to the District Court, provides: " 'Petty offense' means any offense the penalty for which does not exceed imprisonment for a period of three months or a fine of $500."

There is another manner in which an accused charged with a crime or offense within the jurisdiction of the District Court may ultimately have his case tried by a jury. An appeal from a judgment of the District Court in a criminal or traffic case is taken to the circuit court in the county in which the judgment was rendered or to the Criminal Court of Baltimore if the case was originally tried in Baltimore City. It is then tried de novo, unless otherwise agreed by the parties. Code, Art. 26, § 156 (a). Rule 1314 provides: "Upon the filing of an order for appeal to the appellate court in a case to be heard de novo, the rules of procedure governing cases instituted in the appellate court shall apply, except as they relate to the form and sufficiency of the pleadings." Then Rule 741, dealing with election of jury trial at the circuit court level, becomes applicable, and that Rule, in this frame of reference, must be viewed in the light of the provisions of Code, Art. 26, § 145 (b) (5) (ii). Thus, as a statutory right, an accused is entitled to be tried by a jury at the de novo trial if the punishment for the offense charged permits imprisonment for a period in excess of 3 months, and as a constitutional right, he is entitled to be so tried if the punishment for the offense permits a fine in excess of $500.

### III

On 19 January 1972 DENNIS D. SMITH was issued two summonses for violation of the traffic laws. No. 0371612 charged him with exceeding 25 miles per hour, viz. speeding 41 miles per hour in a 25 mile per hour zone. No. 0371613 charged him with "fleeing or attempt to elude police officer." He was tried in the District Court and was found guilty of each offense. He was fined $50 and costs on the speeding conviction and $100 and costs on the "fleeing" conviction. He appealed. The cases were heard de novo in the Criminal Court of Baltimore at a bench trial after his request for a jury trial was denied. He was found guilty of each offense and again fined $50

and costs and $100 and costs respectively. Upon his petition, we certified the cases to this Court for review and determination. Code, Art. 5, § 21.

The offense charged by summons 0371612 is proscribed by Code, Art. 66½, § 11-801. The offense charged by summons 0371613 is proscribed by § 11-904 of that Article. As to each offense the punishment upon conviction as authorized by § 17-101 (b) is a fine of not more than $500 or imprisonment for not more than 2 months or both. In addition, the Legislature has mandated that the Motor Vehicle Administration, upon receiving a record of the licensee's conviction of a violation of § 11-904, forthwith revoke any operator's license when the conviction has become final, § 6-205. There is no appeal from such mandatory revocation, § 6-211. Smith's license was revoked with permission to request an application for reinstatement 60 days from the date his license was turned in, § 6-208. The order of revocation was cancelled when the Administration received notice that the judgments had been appealed, as they were then not final.

Smith contends that the refusal of the Criminal Court of Baltimore to extend to him a trial by jury "is a violation of his constitutional rights under article 3, section 2, . . . and the Sixth and Fourteenth Amendments to the Constitution of the United States." The contention is bottomed only on the right to jury trial guaranteed by the federal constitution. Smith does not suggest that he was denied a trial by jury in violation of the Declaration of Rights of the Maryland Constitution, and, in the light of the judicial construction of those Rights it is quite apparent that they were not here violated. Nor does he claim that he was denied a jury trial in violation of any statute, and we think it plain because of the punishment permitted for the particular offenses with which he was charged that he was without the ambit of Code, Art. 26, § 145 (b) (5) (ii). He does not argue, as he did below, that he was entitled to elect a jury trial under Rule 741. In any event, as we have indicated, that Rule bestows

no right to jury trial. It merely authorizes an accused entitled to a jury trial to elect between a jury trial and a court trial. Smith attempts to invoke Art. III, § 2 of the federal constitution. He may not do so. He was convicted through State prosecution, and Art. III, § 2 concerns the judicial power of the United States, not of the individual states. The jury provisions of that Article have not been held to be applicable to state judicial power or proceedings; it is the Sixth Amendment guarantee that is protected from state action by the Fourteenth Amendment. Therefore the contention is to be determined only with respect to Smith's right to jury trial under the Sixth and Fourteenth Amendments to the Constitution of the United States.

The precise question is, "Were the cases before us to be tried in a federal court would they come within the Sixth Amendment's guarantee of the right of jury trial?" If they would, Smith had the right to jury trial under the due process clause of the Fourteenth Amendment in the trial de novo on appeal.[17]

It is patent that on the basis of the maximum authorized punishment of imprisonment for not more than 2 months and fine of not more than $500, Smith did not have to be extended a jury trial. What Smith urges is that a jury trial was compelled with regard to the offense under Code, Art. 66½, § 11-904, not because of the possible punishment of imprisonment and fine alone, but because of the added possible penalty of the mandatory revocation of his operator's license upon final conviction. It is this legislative mandate to revoke his license to drive, he argues, that raises the offense, in the constitutional sense, from petty to serious. He supports this argument with cases in other jurisdictions which he cites as so holding. *Bell v. Burson,* 402 U. S. 535 (1971), is not apposite. It dealt with Georgia's Motor Vehicle Safety Responsibility Act and held that because the

---

17. Smith made no demand in the District Court for a jury trial. See Code, Art. 26, § 145 (b) (5) (ii).

statute significantly involved the issue of liability, before the State may deprive an individual of his license and registration, it must provide a procedure for determining the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident. *Berberian v. Lussier*, 87 R. I. 226, 139 A. 2d 869 (1958) concerned the suspension of an operator's license without hearing of a motorist who failed to deposit security as provided in the financial responsibility act. It is equally inapposite. In the case before us there was no discretion involved in the revocation of the license. It had to be revoked on the fact of final conviction of the designated offense. The trial of the substantive offense and the appeal proceedings satisfied due process as to hearings. The other cases cited by Smith deal with drunk driving offenses.[18] They uphold the right to jury trial, some on the basis that the offense is serious because some degree of moral turpitude attaches to the drunken driver, and in those in which the revocation of driver's license is mandatory, because that penalty makes the offense severe. He refers us to no cases *contra,* but we find that the decisions are in conflict and that there is a clear division of judicial opinion on the question. The cases contrary to Smith's contention rely on a finding that the offense was petty, and, when license revocation was involved, regarded it as an incidental consequence rather than a punishment for conviction of the offense.[19]

---

18. *Rothweiler v. Superior Court of Pima County,* 100 Ariz. 37, 410 P. 2d 479 (1966); *City of Canon City v. Merris,* 137 Colo. 169, 323 P. 2d 614 (1958); *State of Minnesota v. Hoben,* 256 Minn. 436, 98 N.W.2d 813 (1959); *City of Lima v. Rambo,* 113 Ohio App. 158, 177 N.E.2d 554 (1960); *Artis v. Rowland,* 64 Wash. 2d 576, 392 P. 2d 815 (1964); *Miller v. Winstead,* 75 Idaho 262, 270 P. 2d 1010 (1954); *Evans v. Lambert,* 418 P. 2d 217 (Oklahoma Crim. 1966).

19. Cases denying the right to jury trial as well as those upholding the right are listed and discussed in Annotation, Right to Trial by Jury in Criminal Prosecution for Driving While Intoxicated or Similar Offense, 16 A.L.R.3d 1373.

We point out that in Maryland the offense of driving while in an intoxicated condition proscribed by Code, Art. 66½, § 11-902 (a) is a "serious" offense in the frame of reference of the con-

We are not persuaded that the misdemeanor proscribed by Code, Art. 66½, § 11-904 is raised to the category of a "serious" crime in the frame of reference of the constitutional right to jury trial because of the mandatory revocation of the violator's operator's license upon final conviction. We deem the revocation requirement to be an incidental or collateral consequence. From the types of offenses to which the mandatory revocation of a license is applicable, we find the legislative intent in revoking the privilege to drive a motor vehicle on the highways of this State to be the furtherance of the public safety and welfare, necessary to the proper administration of the traffic laws, rather than punishment. See Code, Art. 66½, §§ 6-205 and 6-205.2. And we believe the same rationale applies with respect to the authority given by the legislature to suspend, revoke or refuse a license after a hearing as provided by § 6-206. We considered the effect of collateral consequences in *In re Martin, supra*. A trial by jury was denied on the ground that a citation for contempt for having taken a photograph in the courthouse in violation of a rule of court was a petty offense. It was forcefully asserted that it could not be considered as petty "because, as a family man, more than sixty years of age, the stigma of a six months sentence and a $500 fine[20] as to [appellant] 'would spell ruin, financial, social and psychological,' particularly in that as a newspaper editor his 'veracity, honesty and obedience to the law is as much his stock in trade as is his publication.'" We said, 10 Md. App. at 388:

> "The difficulty with appellant's position is
> that in none of its rulings on the question has

---

stitutional right to jury trial because the authorized punishment is imprisonment for not more than one year and a fine of not more than $1000. Code, Art. 66½, § 17-101 (b) (i).

20. The court below properly concluded that because no maximum penalty was set for contempt, it could hear the case without a jury provided it did not impose a penalty in excess of 6 months imprisonment and a $500 fine. *Frank v. United States, supra,* at 149.

the Supreme Court considered the likely impact on the individual of a sentence of six months or less as an appropriate guidepost by which to determine, for constitutional purposes, whether the offense was a 'petty' one."

We are not convinced that we should consider collateral or incidental consequences in determining whether an offense is petty or serious. We find support for our position in *Frank v. United States, supra.* The Court pointed out, 395 U. S. at 151, that "the maximum penalty authorized in petty offense cases is not simply six months' imprisonment and a $500 fine." Under the United States Code, "[a] petty offender may be placed on probation for up to five years and, if the terms of probation are violated, he may then be imprisoned for six months." It held that penalties authorized for petty offenses, including a term on probation, may be imposed without a jury. "Probation is, of course, a significant infringement of personal freedom, but it is certainly less onerous a restraint than jail itself." *Ibid.*

We find that the offense proscribed by Code, Art. 66½, § 11-904 is a petty offense.[21] Were the cases before us to be tried in a federal court they would not come within the Sixth Amendment's guarantee of the right to jury trial. Therefore, Smith did not have the right of jury trial under the Fourteenth Amendment, and the court

---

21. We see nothing in the nature of this offense to make it other than petty. We note the attitude of the legislature. By ch. 423, Acts 1971, it reduced the maximum punishment for its violation from a fine of not more than $1000 and imprisonment for not more than 6 months to a fine of not more than $500 and imprisonment for not more than 2 months, thus bringing it within the meaning of petty offense, as to punishment, both under the constitutions and under the statutes relating to the District Court. The Court indicated in *Frank v. United States, supra,* that if the Congress has not viewed an offense as "serious" it would be ill equipped to make a contrary determination. It said: "As this Court said in [*District of Columbia v. Clawans,* 300 U. S. 617, 628] '[d]oubts must be resolved, not subjectively by recourse of the judge to his own sympathy and emotions, but by objective standards such as may be observed in the laws and practices of the community taken as a gauge of its social and ethical judgments.'" 395 U. S. at 152.

below did not err in refusing to extend him one. We so hold.[22]

> *Judgments affirmed; appellant to pay costs.*

---

22. Smith makes no point that a jury trial may be demanded when offenses, all petty, are jointly tried, and the total of the authorized sentences exceeds what would be permissible without a jury trial in the case of a single offense. In any event, it has been held that the defendant in such circumstances is not constitutionally entitled to jury trial. *Scott v. District of Columbia,* 122 A. 2d 579 (D. C. Mun. Ct. App. 1956); *Savage v. District of Columbia,* 54 A. 2d 562 (D. C. Mun. Ct. App. 1947); *State v. James,* 76 N. M. 416, 415 P. 2d 543 (S. Ct. 1966). Cf. *State v. Owens,* 54 N. J. 153, 254 A. 2d 97 (S. Ct. N. J. 1969).