**Stephen Thomas HAAR,**
**Petitioner-Appellant,**

v.

**Michael HANRAHAN,**
**Respondent-Appellee.**

No. 82–1287.

United States Court of Appeals,
Tenth Circuit.

June 1, 1983.

John L. Walker of Teel & Walker, P.A., Albuquerque, N.M., for petitioner-appellant.

Stephen A. Slusher, Asst. Dist. Atty., Albuquerque, N.M., for respondent-appellee.

Before McKAY, BREITENSTEIN and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Stephen Haar appeals from an order of the federal district court denying his petition for a writ of habeas corpus. His petition asserts that New Mexico refused him a jury trial in violation of his federal constitutional rights.

I

Mr. Haar was charged with two offenses, aggravated battery[1] and criminal damage to property,[2] both arising out of the same incident. The aggravated battery charge carried a maximum penalty of one year's imprisonment[3] while the criminal damage to property charge carried a maximum sentence of six months.[4] The case was tried in the magistrate court of Bernalillo County,

1. See N.M.Stat.Ann. § 30–3–5 (1978).

2. See N.M.Stat.Ann. § 30–15–1 (1978).

3. See N.M.Stat.Ann. § 30–1–6(B) (1978).

4. See N.M.Stat.Ann. § 30–1–6(C) (1978).

New Mexico, where the defendant was provided a jury trial pursuant to the local court rules.[5] The jury acquitted Mr. Haar of the aggravated battery charge but found him guilty of the lesser included offense of simple battery, a crime that carried a maximum penalty of six months' imprisonment.[6] The jury also found him guilty of criminal damage to property. The magistrate imposed two consecutive sentences of ninety days' imprisonment for the crimes.

New Mexico law provides that a criminal defendant who is convicted in the magistrate court is entitled to appeal through a trial *de novo* in the district court.[7] Mr. Haar exercised this right to retrial and requested that his case again be heard by a jury. The district court denied this request and reconvicted Mr. Haar of simple battery and criminal damage to property, sentencing him to two concurrent terms of six months' imprisonment.

Mr. Haar sought review of the district court conviction in the New Mexico Court of Appeals. *State v. Haar,* 94 N.M. 539, 612 P.2d 1350 (Ct.App.1980). He claimed that the sixth amendment of the Constitution, as applied to the states through the fourteenth amendment, entitled him to a jury in the district court's trial *de novo.* The court of appeals rejected this claim. It determined that under the retrial provisions of New Mexico law, the defendant could not receive a sentence in the district court's proceedings in excess of that imposed by the magistrate. 94 N.M. 540–41, 612 P.2d at 1351–52. It apparently reasoned that since the defendant was subjected to no greater jeopardy in the *de novo* proceedings than in the magistrate court, he was not entitled to be tried by a jury again. 94 N.M. at 540, 612 P.2d at 1351. In reaching this result, the court noted that the two concurrent six-month sentences imposed by the district court represented an impermissible enhancement of the two consecutive ninety-day sentences imposed by the magistrate. 94 N.M. at 542, 611 P.2d at 1353. The court of appeals therefore remanded the case for a reduction in sentence, and the district court resentenced the defendant to two concurrent terms of ninety days. The defendant's petitions for a writ of certiorari to the New Mexico Supreme Court and to the United States Supreme Court were both denied. *Haar v. State,* 94 N.M. 674, 615 P.2d 991 (1980); *Haar v. State,* 449 U.S. 1063, 101 S.Ct. 787, 66 L.Ed.2d 606 (1980).

## II

In the habeas petition before us, Mr. Haar reasserts his claim that he was constitutionally entitled to a jury trial in the district court. He argues that since he faced conviction in the district court for two crimes arising out of the same transaction, and since the aggregate of the potential sentences exceeded six months, he was entitled to a jury trial. In responding to this argument, we examine the Supreme Court's interpretation of the constitutional right to a jury trial.

### A

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury ...." U.S. Const. amend. VI. In *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the Supreme Court concluded that "trial by jury in criminal cases is fundamental to the American scheme of justice," and accordingly held that "the Fourteenth Amendment guarantees a right of jury trial in all criminal cases which—were they to be tried in a federal court—would come within the Sixth Amendment's guarantee." 391 U.S. at 149, 88 S.Ct. at 1447 (footnote omitted).[8]

---

5. *See* N.M.Magis.R.Crim.P. 23.

6. *See* N.M.Stat.Ann. §§ 30–3–4 & 30–1–6(C) (1978).

7. *See* N.M.Stat.Ann. § 35–13–2 (1978) (amended 1981).

8. In reaching this conclusion, the Court identified a number of values that underlie the right to a jury trial. In particular, the Court noted that jury trials are granted "to prevent oppression by the Government," that they provide "an inestimable safeguard against the corrupt or overzealous prosecutor and against the com-

In *Duncan,* the Court noted that "there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States." 391 U.S. at 159, 88 S.Ct. at 1452 (footnote omitted). The Court cited a number of its past decisions that limited the constitutional right of jury trial to prosecutions involving crimes that would have been considered serious infractions at the time of adoption of the Constitution.[9] It then explained that "the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not and may in itself, if severe enough, subject the trial to the mandates of the Sixth Amendment." 391 U.S. at 159, 88 S.Ct. at 1452. The Court noted that "[t]he penalty authorized by the law of the locality may be taken 'as a gauge of its social and ethical judgments.'" 391 U.S. at 160, 88 S.Ct. at 1453 (quoting *District of Columbia v. Clawans,* 300 U.S. 617, 628, 57 S.Ct. 660, 663, 81 L.Ed. 843 (1937)). In this regard, the Supreme Court stated,

> In determining whether the length of the authorized prison term or the seriousness of other punishment is enough in itself to require a jury trial, we are counseled by *District of Columbia v. Clawans, supra,* to refer to objective criteria, chiefly the existing laws and practices in the Nation.

319 U.S. at 161, 88 S.Ct. at 1453. Thus, the Court apparently adopted an approach suggested in a law review article by the future Justice Frankfurter, evaluating the right to a jury trial primarily on the basis of the opprobrium that society attaches to the crime charged, as measured in part by the potential penalty that might be imposed. *See* Frankfurter & Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv.L.Rev. 917 (1926).[10]

In *Duncan,* the Supreme Court recognized that it was necessary to draw a line in the spectrum of crime, separating petty offenses from serious infractions. 391 U.S. at 160–61, 88 S.Ct. at 1453. In *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), the Court drew that line. A majority concluded that any crime in which a defendant faced a prison sentence in excess of six months constituted a "serious offense." 399 U.S. at 69, 90 S.Ct. at 1888.[11]

The plurality opinion of Justice White reiterated the Court's reliance on "objective criteria reflecting the seriousness with which society regards the offense, ... the most relevant such criteria being the severity of the maximum authorized penalty." 399 U.S. at 68, 90 S.Ct. at 1888. The plurality noted that virtually every court in the

---

pliant, biased, or eccentric judge," and that they reflect "a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." 391 U.S. at 155–56, 88 S.Ct. at 1450–51.

**9.** *Cheff v. Schnackenberg,* 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966); *District of Columbia v. Clawans,* 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937); *Schick v. United States,* 195 U.S. 65, 24 S.Ct. 826, 49 L.Ed. 99 (1904); *Natal v. Louisiana,* 139 U.S. 621, 11 S.Ct. 636, 35 L.Ed. 288 (1891); *Callan v. Wilson,* 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888).

**10.** In the article, the authors examine the common-law antecedents of the sixth amendment jury trial requirement. They conclude that the demarcation between petty and serious is not a rigidly fixed, mechanical concept and instead is influenced by the community's "moral judgment." *See* Frankfurter & Corcoran, *Petty*

*Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv.L.Rev. 917, 980–81 (1926).

**11.** Justice White, joined by Justices Brennan and Marshall, explicitly concluded that the six-month sentence provided an appropriate line for demarking serious from petty offenses and reaffirmed that the primary purpose of the jury is to prevent possible oppression by the government by interposing the judgment of laymen—not another arm of the government—between the accused and the accuser. *See* 399 U.S. at 72–74, 90 S.Ct. at 1890–91. Justice Black and Justice Douglas concurred in the judgment that the petitioner was entitled to a jury trial, but concluded that a jury trial cannot be denied in any case where "the sanction bears all the indicia of criminal punishment." 399 U.S. at 76 n. 2, 90 S.Ct. at 1892 n. 2.

nation provides a jury trial for crimes that entail a potential penalty of greater than six months, and therefore concluded, "This near-uniform judgment of the Nation furnishes us with the only objective criterion by which a line could ever be drawn—on the basis of the possible penalty alone—between offenses that are and that are not regarded as 'serious' for purposes of trial by jury." 399 U.S. at 72–73, 90 S.Ct. at 1890 (footnote omitted).

In drawing the line at six months, the plurality noted that the division "attach[es] different consequences to events which, when they lie near the line, actually differ very little." 399 U.S. at 73, 90 S.Ct. at 1890. The plurality then stated,

> Indeed, the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or "petty" matter and may well result in quite serious repercussions affecting his career and his reputation. Where the accused cannot possibly face more than six months' imprisonment, we have held that these disadvantages, onerous though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications. We cannot, however, conclude that these administrative conveniences, in light of the practices that now exist in every one of the 50 States as well as in the federal courts, can similarly justify denying an accused the important right to trial by jury where the possible penalty exceeds six months' imprisonment.

399 U.S. at 73–74, 90 S.Ct. at 1890–91 (footnote omitted). Thus, while the plurality

examined objective criteria in resolving the reach of the constitutional right to a jury trial, it also recognized that the actual penalty that will be imposed is of primary importance to the defendant. The plurality left unclear, however, the relevance of this "subjective" factor to the constitutional calculus of the right to a jury trial.[12]

### B

Both *Duncan* and *Baldwin* examined the constitutional right to a jury trial that arises when a defendant is charged with a single offense. The instant case involves the right to a jury trial when a defendant is charged with multiple, but admittedly petty, offenses arising out of the same transaction.[13] The Supreme Court has not resolved the scope of the right to a jury trial under these circumstances.[14] However, the Tenth Circuit examined this issue in *United States v. Potvin*, 481 F.2d 380 (10th Cir.1973).

*Potvin* involved two defendants who each faced two petty offense charges arising out of the same incident. The petty offenses carried possible sentences of six months each. The defendants demanded and were denied a jury trial, and upon conviction, they appealed to this court. We stated that "the defendants can view as no less serious a possible penalty of a year in prison when charged with two offenses arising out of the same act, transaction, or occurrence, than if charged with one offense having a potential penalty of one year's imprisonment." 481 F.2d at 382. We held that accordingly they were entitled to a jury trial. 481 F.2d at 383.

In this appeal, the State does not challenge the holding of *Potvin*. Indeed, this

**12.** In the special case of criminal contempt, the Supreme Court has considered the actual sentence imposed when determining the right to a jury trial. *See Muniz v. Hoffman*, 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed.2d 319 (1975); *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). The Court has noted that in criminal contempt the penalty actually imposed will govern the question of seriousness if the legislature has made no judgment concerning the maximum penalty that might be imposed. *Duncan*, 391 U.S. at 162 n. 35, 88 S.Ct. at 1454 n. 35 ("It is therefore understandable that this

Court in *Cheff* seized upon the penalty actually imposed as the best evidence of the seriousness of the offense for which *Cheff* was tried.")

**13.** New Mexico does not contest that the petty offenses arose out of the same transaction.

**14.** The Supreme Court addressed the impact of multiple criminal contempt charges in *Codispoti v. Pennsylvania*, 418 U.S. 506, 515–17, 94 S.Ct. 2687, 2692–93, 41 L.Ed.2d 912 (1974). However, *Codispoti* is of limited precedential value in this case because of the unusual nature of criminal contempt charges. *See supra* note 12.

panel is itself bound by *Potvin*'s holding unless the decision is overruled by the en banc court. Instead, the State argues that *Potvin* is inapposite in Mr. Haar's case.[15] Mr. Haar was charged with two petty offenses in the district court, each carrying a potential sentence of six months' imprisonment. However, the New Mexico courts concluded that in Mr. Haar's trial *de novo* he could receive no greater sentence than the 180 days imposed by the magistrate. The State argues that *Potvin* does not require a jury trial in the *de novo* proceedings since Mr. Haar was not actually facing the possible imposition of a sentence in excess of six months. In considering this argument, we examine the rationale underlying the *Potvin* decision.

## C

*Potvin* implicitly recognizes that modern criminal codes contain proscriptions that are far more complex, detailed, and extensive than the criminal law that existed at the time of the adoption of the Constitution. *See Duncan,* 391 U.S. at 188, 88 S.Ct. at 1469 (Harlan, J., dissenting).[16] In particular, it recognizes that, because modern criminal codes permit multiple charges to flow from a single discrete act of criminality, a criminal prosecution can threaten a defendant with the consequences of a serious offense, even though the defendant is not charged with an offense deemed serious under *Duncan* or *Baldwin.* Thus, strictly applying the serious offense definition may not protect the defendant from an oppressive prosecution.[17] *Potvin* addresses this problem by identifying the "act, transaction or occurrence" that underlies the criminal charges. In determining the right to a jury trial, it looks to the aggregate penalty that could result from the various charges arising out of a discrete criminal transaction.

15. As a threshold matter, the State argues from *Ludwig v. Massachusetts,* 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1981), that since it provides a jury trial in the magistrate court, it need not provide a jury in the district court's trial *de novo.* We find this argument flawed. *Ludwig* involved a two-tier criminal court system in which the defendant had no right to a jury trial in the first tier, a district court, but was entitled to a jury in the second tier, a trial *de novo* in the superior court. The Court held that because the defendant could effectively waive his bench trial in the district court and expeditiously receive a jury trial in the superior court's trial *de novo,* the Massachusetts system did not deny or burden the defendant's right to a jury trial. 427 U.S. at 625–30, 96 S.Ct. at 2785–87. *Ludwig* does not stand for the proposition that because a state provides a jury in preliminary proceedings before a magistrate, it may deny a jury in a trial *de novo.* This is particularly true where, as in New Mexico, the trial *de novo* is conducted "as if no trial whatever had been had in the court below." *Southern Union Gas Co. v. Taylor,* 82 N.M. 670, 486 P.2d 606, 607 (1971). While we find it unnecessary in this case to consider whether there is generally a right to retrial by jury in a trial *de novo,* we note that *Ludwig* does not control the issue.

16. History indicates that the list of criminal proscriptions has continuously expanded with time. For example, in the era of Henry III (1207–72), there were eleven known felony offenses. *See* 2 J. Stephen, A History of the Criminal Law of England 219 (1883). By the era of Chief Justice Coke (1552–1634), the Star Chamber had expanded the common law list of felonies to twenty. *Id.* By Blackstone's era (1723–1780), statutory enactments had increased the list of capital felonies to approximately 160, *id.,* and Blackstone himself complained of the relentless growth of the felony category through parliament's actions. 4 W. Blackstone, Commentaries *18. An examination of modern codes suggests that, while the severity of the penalties for most felonies has diminished, the expansion of criminal proscriptions has not abated.

17. The central purpose of the jury trial is to protect the accused citizen from government oppression. *E.g., Ludwig,* 427 U.S. at 625, 96 S.Ct. at 2785; *Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 1905, 26 L.Ed.2d 446 (1970); *Duncan,* 391 U.S. at 155–56, 88 S.Ct. at 1450–51. When only one offense is charged, as in *Duncan* and *Baldwin,* delineating the right to a jury in terms of whether the crime charged is serious coincides with protecting against oppression, since the most relevant factor in measuring both the seriousness of the charge and the potential oppressiveness of the government action is the possible sentence the charge carries. However, when a particular criminal act results in numerous offenses being charged, defining the right to a jury trial in terms of whether any particular charge is serious no longer simultaneously protects against government oppression since an oppressively long sentence could still be imposed.

However, the *Potvin* opinion does not reveal whether the right to a jury trial should be determined on the basis of the potential penalties provided in the statutory definition of the crimes, or on the basis of the actual penalties faced by the defendant. The choice between the "objective" penalty provided by statute and the "subjective" penalty actually faced by the defendant determines how *Potvin* is applied in this case. Both choices have merit in terms of the values that *Potvin* seeks to protect.

A determination of the right to a jury trial on the basis of the aggregate of the statutorily prescribed penalties imparts a pragmatic temper to the Supreme Court's concept of a "serious offense." By treating the entire criminal act, transaction, or occurrence, rather than its constituent offenses, as the relevant determinant of the seriousness of the crime, the approach comports with both the realities of multiple-crime charging and the language of the sixth amendment, which guarantees the right to a jury trial in the context of "criminal prosecutions."[18] It also comports with the central purpose of the jury, protecting the citizen from governmental oppression, because it assures that a jury trial is available when a defendant faces sentences that, in aggregate, are potentially oppressive. Moreover, the approach is consistent with *Duncan*'s specification that objective criteria be used in determining the seriousness of the crime. The aggregate of the statutorily prescribed penalties provides the objective indicia of the opprobrium that society attaches to the entire criminal act and is thus the appropriate measure of the act's seriousness. Applying this objective measure, we should determine Mr. Haar's right to a jury trial by the aggregate of the two six-month sentences that New Mexico prescribes for the offenses constituting the criminal incident. The twelve-month aggregate potential penalty, rather than

the 180-day maximum sentence that Mr. Haar actually faced, reflects society's moral judgment of the whole of his criminal act. Thus, under an objective measure of the aggregate penalty, Mr. Haar would be entitled to a jury trial.

Alternatively, the right to a jury trial for aggregate petty offenses might be based on the aggregate penalty that the defendant actually faces at the commencement of the trial. Rather than broadening the definition of a "serious offense," this approach effectively recognizes a corollary to that concept, establishing a right to a jury trial where a defendant faces the consequences, as well as an actual charge, of a serious offense. Like the objective measure, this subjective approach views multiple charges realistically, treating the discrete criminal transaction, rather than the particular charged offenses, as the determining factor of the right to a jury trial. By focusing on the potential penalty actually faced by the defendant, the approach ensures that a jury trial is still available in all cases where the defendant is actually threatened with a serious penalty, regardless of the objective seriousness of the individual offenses charged. The approach thus protects the defendant from vindictive prosecution, interposing the jury between the government and the defendant in all cases where there is a risk of serious punishment and a consequent possibility of prosecutorial abuse. It directly embraces the principle value identified by *Duncan* as underlying the right to a jury trial: the prevention of oppressive prosecutions. *See* 391 U.S. at 156, 88 S.Ct. at 1451.[19] Since oppressive prosecutions typically entail the threat of excessive punishment, it is appropriate to use the actual penalty faced by the defendant at the commencement of the trial as the measure of the right to a jury trial; clearly, if the defendant faces multiple charges at trial

---

**18.** *See also Ludwig v. Massachusetts,* 427 U.S. 618, 624, 96 S.Ct. 2781, 2785, 49 L.Ed.2d 732 (1976) ("the right to a jury trial in a 'serious *criminal case* [is] 'fundamental to the American scheme of justice.' ") (emphasis supplied).

**19.** Indeed, in this regard either construction of *Potvin* is more consistent with the values underlying *Duncan* and *Baldwin* than simply asking whether any particular charge carries a potential penalty of more than six months' imprisonment. *See supra* note 17.

but does not actually face a serious penalty, the risk of prosecutorial abuse is small.[20] Applying this subjective standard to the instant case, we should determine Mr. Haar's right to a jury trial on the basis of the 180-day maximum sentence that he actually faced in the trial *de novo*, rather than on the basis of the potential penalties that the New Mexico statutes specify. Under this subjective standard, Mr. Haar would not be entitled to a jury trial.

### D

■ We are thus faced with choosing between an objective and a subjective measure of aggregated criminal penalties in determining the right to a jury trial. In choosing between these two interpretations of *Potvin*, we note that the case has sparked considerable debate. *Compare Maita v. Whitmore,* 508 F.2d 143, 146 (9th Cir.1974), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1676, 44 L.Ed.2d 100 (1975) (rejecting *Potvin*), *with United States v. FMC Corp.,* 428 F.Supp. 615, 620 (W.D.N.Y.1977), *aff'd on other grounds,* 572 F.2d 902 (2d Cir.1978) (following *Potvin*). *See generally* Annot., 26 A.L.R.Fed. 736 (1976); Comment, *Aggregation of Sentences: Obtaining Jury Trials for Petty Offenders,* 59 Iowa L.Rev. 614 (1974).[21] Moreover, we recognize that neither the objective nor the subjective interpretation of *Potvin* can be precisely squared with the Supreme Court's holdings in *Duncan* and *Baldwin*. The objective approach results in a significant broadening of the

concept of a "serious offense," looking beyond the particular offenses charged to the actual criminal activity that the aggregated charges represent. The subjective approach on the other hand departs from the use of objective criteria—the statutorily prescribed penalties for the offenses charged—in analyzing the right to a jury trial.[22] These incongruities arise because the issue we faced in *Potvin,* and must face again now, was not present in *Duncan* and *Baldwin*. *Duncan* and *Baldwin* do not discuss the effect of aggregated charges on the right to a jury trial. In interpreting *Potvin,* we must extend the Supreme Court's reasoning to an area yet uncharted by its precedents.

■ While we find the arguments in favor of the objective interpretation of *Potvin* appealing, we conclude that an expansion of the definition of a "serious offense" is a matter better left to the Supreme Court. Furthermore, given the absence of Supreme Court guidance on this issue, we prefer the interpretation that more narrowly confines the impact of *Potvin* on state courts. Accordingly, we adopt the subjective interpretation. We hold that a defendant is entitled to a jury trial for multiple petty offenses arising out of the same act, transaction, or occurrence only if he is actually threatened at the commencement of trial with an aggregate potential penalty of greater than six months' imprisonment. *Accord United States v. Smyer,* 596 F.2d 939, 942 (10th Cir.1979). Since New Mexico

**20.** We note that, beyond the general threat of governmental vindictiveness, multiple offense charging permits a prosecutor to bring multiple petty offense charges against a defendant for a discrete criminal act, transaction, or occurrence for the specific purpose of threatening the defendant with the consequences of a serious offense while denying him the opportunity for a jury trial. Determining the right to a jury trial on the basis of the actual penalty facing the defendant provides a safeguard against the prosecution's use of creative charging to deny the opportunity for a jury trial.

**21.** State courts generally have not followed *Potvin*. *See, e.g., Smith v. State,* 17 Md.App. 217, 301 A.2d 54, 65 n. 22 (1973). *But see State v. Owens,* 54 N.J. 153, 254 A.2d 97, 102 (1969).

**22.** Arguably, the sentence imposed after trial in the magistrate court, if it sets the upper limit on the sentence the district court can impose in *de novo* proceedings, may be a measure of the societal opprobrium attached to the defendant's act. Aside from this observation, we note that the Supreme Court has indicated that subjective factors are of some relevance to the question of the right to a jury trial, *see Baldwin,* 399 U.S. at 73–74, 90 S.Ct. at 1890–91, and has considered subjective indicia in "unique" situations, *see Duncan,* 391 U.S. at 162 n. 35, 88 S.Ct. at 1454 n. 35, such as criminal contempt. *See supra* note 12. However, the Court continues to rely primarily on objective factors in determining the right to a jury trial. *See Baldwin,* 399 U.S. at 68, 90 S.Ct. at 1887.

law ensured that Mr. Haar would receive an aggregate sentence in his trial *de novo* of no more than 180 days, Mr. Haar is not entitled to a jury trial.[23]

### III

We hold that the defendant was not constitutionally entitled to a jury trial under the Supreme Court's decisions in *Duncan v. Louisiana* and *Baldwin v. New York,* or under our decision in *United States v. Potvin.* The order of the district court denying the petition for a writ of habeas corpus is affirmed.

---

**23.** New Mexico has recently amended its trial *de novo* procedure to permit sentences in excess of those imposed in the magistrate court. *See* N.M.Stat.Ann. § 35–13–2 (Supp.1982). The issue of this amendment's impact on the right to a jury trial is not before us in this case.