786 P.2d 42

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jesus Martinez SANCHEZ,
Defendant–Appellant.**

No. 18750.

Supreme Court of New Mexico.

Feb. 5, 1990.

Jacquelyn Robins, Chief Public Defender, Linda Yen, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Hal Stratton, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Marc A. Gordon, Carlsbad, Trial Counsel.

OPINION

SOSA, Chief Justice.

Defendant Jesus Martinez Sanchez appeals his convictions of driving with a suspended or revoked license and driving while under the influence of intoxicating liquor (DWI), contrary to NMSA 1978, Sections 66–5–39 (Repl.Pamp.1984, now Repl.Pamp. 1989) and 66–8–102 (Repl.Pamp.1987). Defendant contends, because the aggregate, maximum, authorized statutory penalty for his convictions amounted to more than 180 days incarceration, the district court erred

in denying his demand for jury trial on his appeal *de novo* from the magistrate court.

Our jurisdiction is authorized by the provisions of NMSA 1978, Section 34–5–14(C) (Repl.Pamp.1981), based upon certification by the New Mexico Court of Appeals. The controlling issue concerns the constitutional right to trial by jury and is of substantial public interest that should be determined by the supreme court. Based upon the following discussion, we reverse the judgment of the district court.

■ Defendant originally was charged and convicted in magistrate court with DWI, a petty misdemeanor, and driving with a suspended or revoked license, a misdemeanor. The combined statutory penalty for these offenses amounted to nine months—ninety days on the DWI conviction and 180 days on the conviction of driving with a suspended or revoked license. The trial in magistrate court was a bench trial despite the lack of evidence in the record to establish that defendant knowingly, intelligently, and voluntarily waived his right to jury trial. *See* SCRA 1986, § 6–602 (Repl.Pamp.1988) (jury trial for petty misdemeanor requires oral or written demand at time of entering plea or in writing within ten days after time of entering plea; if offense is misdemeanor, case shall be tried by jury unless defendant waives jury trial with approval of court and consent of state); *State v. Shroyer*, 49 N.M. 196, 160 P.2d 444 (1945). However, even a valid waiver would not have precluded the defendant from requesting a jury in the *de novo* appeal in district court. *See* N.M. Const. art. II, § 12; SCRA 1986, § 6–703(A) & (H) (Repl.Pamp.1988) (defendant aggrieved by judgment rendered by magistrate court may appeal to district court for *de novo* review governed by Rules of Criminal Procedure for District Courts); SCRA 1986, § 5–605(A) (criminal cases required to be tried by jury shall be so tried unless defendant waives jury trial with approval of court and consent of state); *Southern Union Gas Co. v. Taylor*, 82 N.M. 670, 486 P.2d 606 (1971) (trial *de novo* defined as a trial "anew"). Upon the finding of guilt on both charges, the magis-

trate court ordered the maximum sentence for each offense, but then suspended five of the six months on the driver's license conviction and ordered 120 days' total incarceration and five months' supervised probation.

Defendant appealed his convictions to the district court and filed a demand for jury trial. *See* NMSA 1978, § 35–13–2(A) (Repl. Pamp.1988) (appeals from magistrate courts shall be tried *de novo* in district court). Subsequently, the state's motion to strike defendant's jury demand was granted based upon: (1) a notice filed by the state that it would not seek enhancement of defendant's sentence, (2) the state's stipulation to limit the sentence to that imposed by the magistrate court, and (3) the district court's declaration before trial that, if defendant was convicted of the charges, the court would limit the maximum sentence of incarceration to no more than 180 days. Following the bench trial, defendant was found guilty of both charges and sentenced identically to that ordered by the magistrate court. *See* NMSA 1978, § 35–13–2(C) (on *de novo* appeal district court may impose the same, a greater, or lesser penalty).

■ This certification presents the following question: Whether, in determining the constitutional right to jury trial of a defendant charged with more than one petty crime arising from a single incident, a court should consider the objective measure of the combined, maximum statutory penalties or the subjective measure of the actual penalty threatened at the commencement of trial. We hold that the objective measure is to be used in making this determination.

The sixth amendment to the United States Constitution specifies that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * * * " The right to trial by a jury is made applicable to the states by the fourteenth amendment. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *see also* N.M. Const. art. II, § 12. In *Duncan*, the Court, finding it necessary to draw a line

separating petty offenses from serious crimes, held that certain petty offenses are not subject to the sixth amendment jury trial provision and should not be subject to the fourteenth amendment jury trial requirement applied to the states. 391 U.S. at 159, 88 S.Ct. at 1452.

The subsequent case of *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970) (plurality opinion), examined objective criteria in resolving the reach of the constitutional right to a jury trial. The Court reiterated its reliance on the objective criterion of the maximum, authorized penalty, finding it to be the most relevant and reflective of the seriousness with which society regards an offense. *Id.* at 68, 90 S.Ct. at 1887. The Court held that "a potential sentence in excess of six months' imprisonment is sufficiently severe by itself to take the offense out of the category of 'petty'" so as to permit a defendant to demand a trial by jury. *Id.* at 69, n. 6, 90 S.Ct. at 1888, n. 6. However, the *Baldwin* court also recognized the importance to a defendant of the actual penalty to be imposed. But, as noted by the Tenth Circuit Court of Appeals in *Haar v. Hanrahan*, 708 F.2d 1547 (10th Cir.1983): "The plurality [in *Baldwin*] left unclear * * * the relevance of this 'subjective' factor to the constitutional calculus of the right to a jury trial." *Id.* at 1550.

We note that the related issue of whether the penalties for several petty crimes could be considered in the aggregate in determining a defendant's right to a jury trial has been addressed by the Tenth Circuit Court of Appeals in *United States v. Potvin*, 481 F.2d 380 (10th Cir.1973), and by this court in *Vallejos v. Barnhart*, 102 N.M. 438, 697 P.2d 121 (1985). However, it was not until 1983, in *Haar v. Hanrahan*, that the Tenth Circuit squarely was faced with choosing between the objective or subjective measures of aggregate criminal penalties in determining the right to a jury trial. The *Potvin* court favored combining the potential, aggregate penalties that could result from various charges arising out of a single criminal transaction. The court stated that "defendants can view as no less serious a possible penalty of a year

in prison when charged with two offenses arising out of the same act, transaction, or occurrence, than if charged with one offense having a potential penalty of one year's imprisonment." 481 F.2d at 382.

However, the *Potvin* opinion [did] not reveal whether the right to a jury trial should be determined on the basis of the potential penalties provided in the statutory definition of the crimes, or on the basis of the actual penalties faced by the defendant. The choice between the "objective" penalty provided by statute and the "subjective" penalty actually faced by the defendant [prior to trial] determines how *Potvin* is applied in [a case involving multiple offenses arising out of the same transaction].

*Haar*, 708 F.2d at 1552.

*Vallejos* also appears to have confused the issue by injecting a footnote discussion of the subjective measure of the actual criminal penalty faced by a defendant into the majority's opinion analysis that adopted the objective measure in determining whether to afford the defendant, in this case, his statutory right to jury trial. *Vallejos* involved an appeal *de novo* from the metropolitan court to the district court, distinguished from the present case that involves a *de novo* appeal to the district court from the magistrate court. *But see* NMSA 1978, § 34–8A–2 (Repl.Pamp.1981) (for all purposes of state law a metropolitan court is a magistrate court). There defendants were charged with multiple traffic violations. In construing Section 34–8A–5(B), applicable to metropolitan court and mandating that "if the penalty does not exceed ninety days' imprisonment * * * the action shall be tried by the judge without a jury," the court held that defendants were entitled to a jury trial where the aggregate penalty exposed them to imprisonment of ninety days or more. 102 N.M. at 440–41, 697 P.2d at 123–24. Referring to *Duncan* and *Baldwin*, the court stated:

Both cases are highly supportive of our decision * * * in that they state the most relevant criteria of the seriousness of an offense to be "the severity of the maxi-

mum authorized penalty." *Baldwin,* 399 U.S. at 68, 90 S.Ct. at 1888.

\* \* \* \* \* \*

[W]e do not consider *Duncan* and *Baldwin* to be in conflict with the principle that the authorized *aggregate* penalty determines the existence of the right to a jury trial in a multiple-offense situation. *Accord Haar v. Hanrahan,* 708 F.2d 1547 (10th Cir.1983); *United States v. Potvin,* 481 F.2d 380 (10th Cir.1973).

*Vallejos,* 102 N.M. at 441, 697 P.2d at 124 (emphasis in original); *see also Meyer v. Jones,* 106 N.M. 708, 749 P.2d 93 (1988) (*Vallejos* holding accords with analysis of period of potential deprivation of liberty as basis for determining nature of offense and attendant right to jury trial).

In *Haar v. Hanrahan,* cited in *Vallejos,* the Tenth Circuit was asked to decide whether a New Mexico defendant, charged in magistrate court with two offenses arising out of the same incident with an aggregate, potential sentence in excess of six months, was entitled to a jury trial. Although decided prior to a statutory amendment permitting a district court to impose a greater sentence than that imposed by the magistrate court, a resolution of the issue required the *Haar* court to choose between the objective or subjective measure of aggregated criminal penalties in determining the right to a jury trial. While noting the merits of each choice in terms of the values *Potvin* sought to protect, the court adopted the subjective measure. The court reasoned that a narrow, subjective interpretation of *Potvin* more closely followed the Supreme Court's rationale in *Duncan* and *Baldwin,* adhering to the view that an expansion of the definition of a "serious" offense was better left to the U.S. Supreme Court.

Recently, however, the U.S. Supreme Court did address the issue in *Blanton v. City of North Las Vegas, Nevada,* 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). In contrast to the *Haar* opinion, the Court reaffirmed the *Baldwin* Court's objective standard in its discussion of whether adverse collateral consequences, such as fines, license suspensions, proba-

tion and community service, when taken together with the authorized penalty of incarceration would be sufficient to require a jury trial. Quoting *Landry v. Hoepfner,* 840 F.2d 1201, 1209 (5th Cir.1988), the Court stated: "The judiciary should not substitute its judgment as to seriousness [of a crime] for that of a legislature, which is 'far better equipped to perform the task, and [is] likewise more responsive to changes in attitude and more amenable to the recognition and correction of their misperceptions in this respect.'" 489 U.S. at ——, 109 S.Ct. at 1292.

Thus, while encouraging deference to the legislature's classification of serious and petty crimes as determined by the sanctions imposed for those who are found guilty, the Court ruled that primary emphasis must be placed on the maximum authorized period of incarceration in determining the right to jury trial. The Court noted that additional statutory penalties such as fines and probation could entitle a defendant to a jury trial "only if he can demonstrate that \* \* \* [, when] viewed in conjunction with the maximum authorized period of incarceration, [the additional penalties] are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." *Id.* 489 U.S. at ——, 109 S.Ct. at 1293. The Court further recognized that, although such sanctions may result in a significant infringement of personal freedom, they cannot approximate in severity the loss of liberty that incarceration entails. *See id.* 489 U.S. at ——, 109 S.Ct. at 1292; *accord Meyer v. Jones,* 106 N.M. at 710, 749 P.2d at 95 (potential period of probation more than six months does not present degree of liberty deprivation that would trigger right to jury trial).

Unlike the present case wherein the defendant was charged with several petty offenses arising out of the same transaction, the decisions in *Duncan, Baldwin,* and *Blanton* involved fact situations wherein the defendants were charged only with one offense. Nevertheless, defendant relies upon those holdings, as well as the majority discussion in *Vallejos,* for the con-

tention that the actual sentence imposed cannot be constitutionally determinative of the right to a jury trial. On the other hand, the state contends that, pursuant to the footnote discussion in *Vallejos* and the Tenth Circuit's opinion in *Haar*, the subjective measure controls and the district court is not required to accord defendant a right to jury trial if the court placed in the record prior to trial a declaration that defendant would not be subjected to imprisonment more than 180 days in the event the defendant was found guilty of the charged offenses.

We believe, however, an acceptance of the state's argument would be inconsistent with one of the basic purposes of the sixth-amendment guarantee to a jury trial: "to prevent oppression by the Government" by interposing the safeguard of a jury trial between the accused and a possibly "corrupt or overzealous prosecutor * * * [or a possibly] compliant, biased, or eccentric judge." *Duncan*, 391 U.S. at 155–56, 88 S.Ct. at 1451. Recognizing the power in the prosecution or the trial court to deprive the accused of the right to a jury trial in this way would frustrate the purpose.

Further, in light of the language in *Blanton* that, with regard to criminal penalties, the judiciary should not substitute its judgment for that of the legislature, we explicitly overrule any notion that the subjective measure in terms of the actual sentence threatened prior to trial should be used in determining a defendant's right to a jury trial. *Accord State v. Grimble*, 397 So.2d 1254 (La.1980) (trial court may not curtail accused's right to jury trial by agreeing in advance to limit sentence; legislative determination of seriousness of crime entitles accused to jury trial, not arbitrary decision of trial court). Thus, we find the footnote discussion in *Vallejos*, which is unsupported by authority and devoid of any basis for its conclusion, to be without binding effect as a rule of law.

Moreover, the *Vallejos* holding, although not expressly overruling *State v. James*, 76 N.M. 416, 415 P.2d 543 (1966), which held that the potential sentences facing a defendant should not be cumulated but rather should be treated separately, did so implicitly. The defendant in *James* was charged with three separate petty misdemeanors and was not permitted to combine the possible sentences in order to be entitled to a jury trial. Accordingly, to be clear, the case of *State v. James*, 76 N.M. 416, 415 P.2d 543 (1966), is hereby expressly overruled. We find the rationale surrounding the concept of the objective measure to be more in line with the constitutional mandate for jury trials in cases in which the possible sentence exceeds six months, whether for a single offense or for multiple offenses arising from the same incident or transaction.

Therefore, the ruling of the district court that denied defendant his request for a jury trial is reversed. This cause is remanded for proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

RANSOM, MONTGOMERY and WILSON, JJ., concur.

BACA, J., dissents.

BACA, Justice (dissenting).

Today this court has decided that a defendant on trial for multiple petty crimes is entitled to a trial by jury even when the court determines that it will not impose a sentence greater than ninety days, simply because the aggregate potential penalty exceeds ninety days. Yet, the United States and New Mexico Constitutions do not dictate the result reached today, our legislature has not mandated the result, and our precedent stands opposed to the result. We are faced with a choice between two noble goals: extending the guarantees of a trial by jury, and providing an efficient judicial system. The result reached by the majority, while not required by the sixth amendment and not required by due process, will seriously interfere with the efficiency of our courts and logjam our already seriously overburdened judicial system, and accordingly, I dissent.

The United States Supreme Court has not spoken directly on the constitutionality of the aggregate sentencing situation we

are faced with today. *See Blanton v. City of N. Las Vegas,* 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989); *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). In *Haar v. Hanrahan,* 708 F.2d 1547 (10th Cir.1983), the Tenth Circuit refused to expand the definition of a serious offense constitutionally requiring the opportunity for a jury trial, and found that, in a situation where sentences could be aggregated, when none of the crimes were by definition a serious crime, the right to a jury attached only if the possible sentence actually faced by the defendant exceeded six months. *Id.* at 1553. The majority today, however, implicitly contends that *Haar* was overruled in part by the adoption of the "objective test" in *Blanton.* *Blanton* did adopt an objective test, but the majority misconstrues its significance as it applies to the case at bar.

The sixth amendment requires a defendant be afforded a jury in a trial for a serious crime. *District of Columbia v. Clawans,* 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937). However, this right is not guaranteed for petty crimes, because the potential infringement of sixth amendment rights by restricting access to the jury is outweighed by expediency and the right to a speedy trial. *Duncan,* 391 U.S. at 160, 88 S.Ct. at 1453. The legislature, by deciding that a penalty greater than six months could be imposed has determined that, in the eyes of society, the offense is serious. *See id.* ("The penalty authorized by the law of the locality may be taken 'as a gauge of its social and ethical judgments.'" [Citation omitted.]) When a crime is punishable by more than six months in prison, it is not the penalty per se that initiates the guarantee of a jury, but the value judgment of society implicit in the penalty. The length of the sentence is a statement that the crime is serious—

and the sixth amendment guarantee of a right to a jury attaches because the trial is for a *serious* crime.

A jury trial is also constitutionally mandated when incarceration exceeds six months. *See United States v. Potvin,* 481 F.2d 380 (10th Cir.1973); *see also Frank v. United States,* 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969) (no jury required for criminal contempt where Congress has not specified a range of sentences and therefore has not categorized offense as serious; jury required only if potential sentence exceeds six months). Possible incarceration for such a long period is potentially a great infringement of an individual's liberty interest, mandating that the sixth amendment be given effect. *See Muniz v. Hoffman,* 422 U.S. 454, 477, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975).

The majority has misplaced its emphasis on the quotation from *Blanton, see* 109 N.M. at 431, 786 P.2d at 45, that states that the legislature is the appropriate body to determine a sentence for a particular criminal act and that the judiciary should not substitute its own judgment for that of the legislature in determining whether a crime is "serious." This view is proper when the length of a sentence is being used to determine whether a crime is serious, but it has no place in a consideration of the issue we face today.[1] The constitution requires the right to a jury when the crime is serious or the actual sentence faced is serious. The legislature has already spoken on whether it considers driving while intoxicated and driving with a suspended or revoked license "serious crimes," as that term of art is used in the case law, and it has said "no." The only issue, then, is whether the defendant faces serious incarceration and, in this case, the trial judge has said "no."

In addition, this view potentially abrogates separation of powers principles by

---

1. The context in which *Blanton* was decided should be considered as well. In *Baldwin,* the Court determined that the objective test was determinative of the right to a jury trial when the legislature authorized confinement for greater than six months. *Blanton,* on the other hand, considered the opposite question—does a

sentence of less than six months automatically classify the offense as petty. While determining that it did not as a matter of constitutional law, the Court reaffirmed the significance of the legislature's objective classification as an objective benchmark.

infringing on the judiciary's proper role to determine the proper sentence for an individual defendant. The trial judge has been delegated the authority to use his or her judgment to assess the circumstances of a given infraction and to determine a sentence, within the broad outlines defined by· the legislature. A determination of whether a particular defendant should receive the maximum possible sentence or a lesser sentence within the range set by the legislature is an integral part of the judicial task. Sentencing is a function that involves the three bodies of our government, and each branch must be allowed to fulfill its function. To deny the role of the judiciary in setting sentences and the accompanying effect it may have on the right to a jury trial when that right turns solely on the length of possible incarceration and the defendant's liberty interest is a serious infringement on judicial power. *See Mistretta v. United States*, 488 U.S. 361, ——, 109 S.Ct. 647, 650–51, 666, 102 L.Ed.2d 714 (1989) (discussing the role of the judiciary in sentencing while determining the constitutionality of the United States Sentencing Commission).

Thus, what we are left with is the majority's interpretation of NMSA 1978, Section 34–8A–5(B) (Repl.Pamp.1981) to require a jury. This interpretation contradicts this court's precedents, and it flies in the face of principles of separation of powers and accepted principles of statutory construction.

This court has previously decided the issue presented today, and we properly recognized the conflicting interests presented by it. In *Vallejos v. Barnhart*, 102 N.M. 438, 697 P.2d 121 (1985), we held that, when a defendant is subject to incarceration for greater than ninety days when penalties for multiple crimes are aggregated, he has a right to a jury. *Id.* at 441, 697 P.2d at 124 (interpreting NMSA 1978, § 34–8A–5(B) (Repl.Pamp.1981)). We also indicated that, if the judge declares on the record prior to trial that he or she will not impose a sentence greater than ninety days, the defendant has no right to a jury trial. *See also State v. James*, 76 N.M. 416, 420, 415 P.2d 543, 546 (1966) ("The

consolidation of the petty offenses for trial does not change their nature * * * *") The acceptance of the "objective test" with reference to the sentence for one crime to determine whether it is serious is irrelevant to this situation and does not affect the constitutionality of our precedent. Yet, the majority has determined that it justifies our abolishing accepted principles.

Thus, it is apparent that the majority's decision is neither based on a constitutional requirement nor an analysis of our precedent. Furthermore, in promulgating NMSA 1978, Section 34–8A–5(B) (Repl. Pamp.1981), our legislature has acted in derogation of the common law, and thus the statute should be strictly construed. *See Tomlinson v. State*, 98 N.M. 213, 215, 647 P.2d 415, 417 (1982). The statute specifically refers to the right to a jury when a potential sentence exceeds ninety days in a trial for an individual offense, not the aggregate situation. The statute passes constitutional muster when given its plain meaning, and we should not expand it beyond its plain meaning and the scope obviously intended by the legislature. *See Vallejos*, 102 N.M. at 441–42, 697 P.2d at 124–25 (Stowers, J., dissenting).

If the guarantees of a jury were the only values at issue today, the majority's decision would not cause any great harm. However, the guarantees of a jury must be balanced against the costs to the judicial system. In *Duncan*, the Supreme Court found that petty offenses were traditionally exempt from jury requirements by the common law, and stated that "possible consequences to defendants from convictions for petty crimes have been thought insufficient to outweigh the benefits to efficient law enforcement and simplified judicial administration resulting from the availability of speedy and inexpensive nonjury adjudications." 391 U.S. at 160, 88 S.Ct. at 1453. This court has recently affirmed its commitment to the significance of a speedy trial, stating that our system " 'places the primary burden on the courts and the prosecutors to assure that cases are brought to trial.' " *Zurla v. State*, 109 N.M. 640, 789 P.2d 588 (1990) (quoting *Barker v. Wingo*,

407 U.S. 514, 529, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972)). While this court in *Zurla* directly placed the burden on the court system to expeditiously bring cases to trial, today it has eroded the judiciary's ability to operate efficiently, both to the prejudice of society and defendants whose trials will be further delayed in our already overcrowded court system. I do not feel that the benefits of the protections afforded by a jury out-weigh these countervailing considerations, and I anticipate disastrous results in the lower courts of this state.