798 P.2d 596

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**RICKY G., Defendant–Appellant.**

No. 11351.

Court of Appeals of New Mexico.

Aug. 30, 1990.

Hal Stratton, Atty. Gen., Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

OPINION

MINZNER, Judge.

The child appeals from the disposition of his case in children's court. The only reme-dy requested on appeal is a new disposition-al hearing.

*Background.*

After this case was calendared, it became apparent that the tapes of the disposition hearing could not be located. By order of this court, the docketing statement, motions to amend the docketing statement, and memoranda in response provide the factual basis for the appeal. The same order allowed the state to provide its own statement of facts in the answer brief. There has been no dispute as to the relevant facts, and, in the absence of objections by the state, we accept the child's allegations of fact as correct.

The child admitted committing a delinquent act, consumption of alcohol by a minor. The children's court committed him to the Youth Diagnostic and Development Center (YDDC) for a sixty- to ninety-day evaluation. After the evaluation was completed, the children's court held a dispositional hearing.

The written recommendations received from the YDDC and the local juvenile probation officer both recommended a suspended commitment to the Boys' School, that the child be returned to his home, and that the family receive therapy. However, at the dispositional hearing, the juvenile probation officer orally changed his recommendation and recommended that the child be committed to the Boys' School for an indeterminate term not exceeding two years. The child's counsel, apparently surprised by the change, asked for a continuance to prepare an alternative sentencing plan. The children's court denied the continuance; according to the docketing statement as amended, the court indicated that no alternative plan was possible and that nothing defense counsel could present would persuade the court that the recommendations against incarceration were appropriate. The court, without asking the child if he personally wished to address the court prior to the disposition of the case, ordered that the child be committed to the legal custody of the corrections department for an indeterminate period not to exceed two years. The child did not ask to personally address the court prior to the court's announcement of its disposition of the case.

On appeal, the child argues that the failure of the children's court to ask him if he had anything to say prior to announcing its disposition of his case denied him his right to allocution, which he contends is a basic right under NMSA 1978, Section 32–1–27(A) (Repl.Pamp.1989), and that this court should remand the case for a new sentencing hearing before a different judge. We agree. Because of our disposition, we do not reach the other issues argued on appeal.

*Preservation of Error.*

At the outset, we must determine whether the issue raised on appeal was raised and preserved below. *See* SCRA 1986, 12–216. Assuming without deciding that the issue was not properly raised and preserved below, we exercise our discretion to consider the issue on appeal as an issue of general public interest. *See* R. 12–216(B)(1). *Cf. State v. Doe,* 90 N.M. 572, 566 P.2d 121 (Ct.App.1977) (dispositional powers of the children's court with respect to mentally ill delinquent child); *State v. Doe,* 90 N.M. 536, 565 P.2d 1053 (Ct.App. 1977) (application of double jeopardy to multiple probation revocation proceedings).

*Right to Allocution.*

The Children's Code, NMSA 1978, Sections 32–1–1 to –59 (Repl.Pamp.1989), guarantees to children "the same basic rights as an adult, except as otherwise provided in the Children's Code." § 32–1–27(A). In *Tomlinson v. State,* 98 N.M. 213, 215, 647 P.2d 415, 417 (1982), our supreme court held that NMSA 1978, Section 31–18–15.1 (Repl.Pamp.1987), requiring a sentencing hearing to determine whether aggravating or mitigating circumstances exist, also required the trial court to give a defendant an opportunity to speak before the trial court pronounces sentence. This court has explicitly interpreted *Tomlinson* to require that a defendant be invited to address the court directly. *State v. Stenz,* 109 N.M. 536, 787 P.2d 455 (Ct.App.1990). However, in *Stenz,* this court held that due process did not require that a defendant be afforded a right to address the court personally

before being sentenced for a misdemeanor. Our holding in *Stenz* was based on the absence of a statute or rule providing for allocution and the lack of policy reasons to require allocution in misdemeanor cases.

The state attempts to distinguish *Tomlinson* and bring this case within the ambit of *Stenz* by arguing, in effect, that dispositional hearings are not required in children's court. In support of this argument, the state points to Section 32–1–31(F), allowing the court to make disposition immediately after it finds the child to be delinquent, and Section 32–1–31(G), concerning evidence that can be considered at dispositional proceedings. Neither of these statutes supports the state's position.

The Children's Code contemplates a multi-stage process. The Code separates the issues of whether the child committed the delinquent act, whether the child is in need of care and rehabilitation, or what disposition should be ordered. *See* § 32–1–31(D), (E), (F); *see Doe v. State*, 92 N.M. 74, 582 P.2d 1287 (1978). Within this context, the statutory provision allowing the children's court to proceed immediately to disposition provides flexibility in scheduling; it does not eliminate the need for a hearing. Similarly, Section 32–1–31(G), which allows the children's court to consider at the dispositional hearing evidence that would not have been competent had it been offered during the hearings on adjudicatory issues and the issue of need for care and rehabilitation, authorizes the children's court judge to exercise broad discretion in considering evidence as to the appropriate disposition. *Doe v. State.* In authorizing the children's court judge to consider a wide range of evidence, the legislature cannot be understood to have authorized the children's court to omit the dispositional phase.

Moreover, we believe there are strong policy considerations that compel the recognition of allocution in children's court and that distinguish this case from our holding in *Stenz.* The legislature has required that the Children's Code be interpreted and construed to effectuate certain express legislative purposes. § 32–1–2; *State v. Jona-*

*than M.,* 109 N.M. 789, 791 P.2d 64 (1990). With respect to delinquent children, the purposes of the Children's Code are to remove from the child the adult consequences of criminal behavior while still holding the child accountable for his actions, and to provide an appropriate program of supervision, care, and rehabilitation. § 32–1–2(B) & (D). Indeed, the statutory provision for commitment to treatment and rehabilitation distinguishes the Children's Code from comparable statutes governing crimes committed by adults. "Once a child is deemed 'within the Children's Code' the court must fashion a remedy beneficial to both the child and society." *State v. Jonathan M.,* 109 N.M. at 790, 791 P.2d at 65.

In reference to adults, our supreme court has observed that " '[T]here is no substitute for the impact on sentencing which a defendant's own words might have if he chooses to make a statement.' " *Tomlinson v. State,* 98 N.M. at 215, 647 P.2d at 417 (quoting *Mohn v. State,* 584 P.2d 40, 44 (Alaska 1978)). We believe that the child's statements are even more important in a children's court proceeding. The child's own view of the situation, his willingness to accept responsibility for it, and his remorse or lack thereof is, or at least should be, an important consideration in determining an appropriate program of care, supervision, and rehabilitation. Moreover, by inviting the child to participate directly in the dispositional hearing, the children's court indicates that the child's views are relevant and material. That message may have rehabilitative value. *See* ABA Juvenile Justice Standards, *Standards Relating to Dispositional Procedures,* Part VI, § 6.3(C), commentary, at 50 (1980) (hereinafter Standards).

Finally, we believe the state's argument analogizing children's court cases to misdemeanor proceedings ignores the realities of the situation. As a matter of law, a child who is found to have committed a delinquent act, whatever its nature, may be committed to an appropriate institution for up to two years. *See* §§ 32–1–34(E) & –38(A). An adult may receive a sentence of two years only for a crime the law

declares to be a felony. NMSA 1978, § 31–18–15 (Repl.Pamp.1987). We believe the potential length of confinement is a significant factor in determining whether children's court proceedings should be analogized to felony rather than misdemeanor proceedings. *Cf. State v. Sanchez*, 109 N.M. 428, 786 P.2d 42 (1990) (availability of right to a jury trial should be determined by objective standard based on the legislative maximum, rather than by any limitation imposed by the trial court prior to trial). Further, two years may be an even more significant period of time for a child than for an adult. In short, objectively and subjectively, a child charged with a delinquent act faces charges that are comparable in seriousness to a felony prosecution.

 For these reasons, we conclude that a child has the right to address the children's court before disposition. *See* Standards, § 6.3(C). We also conclude that the children's court should offer a child the opportunity to address the court before pronouncing sentence.

*Reassignment to a Different Judge.*

The child asks this court to order that this case be assigned to a different judge on remand. In support of his request, he relies on *United States v. Robin*, 553 F.2d 8 (2d Cir.1977). In *Robin*, the Second Circuit indicated that there were three principal factors relevant to an appellate court's consideration of whether a new judge should be assigned to the case on remand, absent proof of personal bias that would require recusal. These factors are:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 10. In *State v. Whitaker*, 110 N.M. 486, 797 P.2d 275 (Ct.App.1990) (No. 11,-254), this court discussed the *Robin* standard but found it unnecessary to decide whether to adopt it. *See also United States v. Heubel*, 864 F.2d 1104 (3rd Cir. 1989). Here, also, we do not believe it is necessary to adopt the standard in order to answer the child's request, although we note that a number of federal circuit courts of appeal have adopted the *Robin* standard. *Id.* at 1112 n. 4. However, the standard is helpful in explaining our decision.

 In this case, according to the docketing statement, the children's court has already indicated that nothing would persuade the court that the recommendations against incarceration were appropriate. *See United States v. Navarro–Flores*, 628 F.2d 1178 (9th Cir.1980) (reassigning the matter to a different judge for sentencing where defendant had been denied his right to allocution and the trial court had expressed strongly-held views concerning the defendant). Moreover, the reassignment of this case to a different judge would preserve the appearance of justice, and would not entail waste and duplication. Indeed, in connection with this last factor, we note that the judge who imposed sentence on the child was not the same judge who had conducted prior proceedings in this case. Under these circumstances, we conclude that the case should be assigned to a different judge for disposition.

*Conclusion.*

For the reasons given above, the disposition entered in this case is vacated, and the case is remanded to the children's court for a new dispositional hearing during which the child shall be accorded his right to allocution. We note that the record proper does not have the child's last name deleted, in violation of Section 32–1–39(A). The clerk of this court is instructed to return the copy of the children's court record filed in this court, and the children's court is instructed to delete the name of the child from all documents contained therein. Thereafter, the children's court shall return the copy to this court. The clerk of this court is directed to delete the name of the

child from all documents filed in this court that are not part of the children's court record.

IT IS SO ORDERED.

CHAVEZ, J., concurs.

HARTZ, J., specially concurring.

HARTZ, Judge (specially concurring).

I concur in the result but not in the opinion of the court, except with respect to the procedure on remand.

NMSA 1978, Section 32-1-27(A) (Repl. Pamp.1989) states, "A child subject to the provisions of the Children's Code is entitled to the same *basic* rights as an adult, except as otherwise provided in the Children's Code." (Emphasis added.) The statute did not afford the child a right to allocution in this case for two reasons. First, allocution is not a basic right for adults represented by counsel. Second, in New Mexico only felons, not misdemeanants, are entitled to allocution. When a right is afforded to some adults but not others, I would read Section 32-1-27(A) to say that a child is entitled to the right only if an adult accused of the same misconduct would be entitled to the right. Because the child's misconduct here would not have constituted a felony, he was not entitled to allocution.

Nevertheless, I concur in reversal because the children's court pronounced its disposition before the child or his counsel could address the court on the subject.

DEFINITION AND IMPORTANCE OF THE RIGHT OF ALLOCUTION

Allocution is not the right of the defendant to address the court. "At common law the defendant in a felony case had a right, called 'allocution,' to be asked formally whether he had 'any thing to offer why judgment should not be awarded against him.'" Note, *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv.L.Rev. 821, 832 (1968) (quoting 4 W. Blackstone, Commentaries *375). "[A]llocution is an authoritative address by the court to the prisoner as he stands at the bar for sentence." *Green v. United States*, 365 U.S. 301, 307 n. 2, 81 S.Ct. 653,

657 n. 2, 5 L.Ed.2d 670 (1961) (quoting Barrett, *Allocution*, 9 Mo.L.Rev. 115, 232, at 254 (1944)).

Allocution is a peculiar right. In a sense, it is the right to be advised of another right.

To appreciate this peculiarity, consider what would seem to be an analogous situation. Just as a defendant has the right to address the court before imposition of sentence, a defendant has the right to testify at trial. Indeed, the right to testify at trial would seem to be a more important right than the right to personally address the court at sentencing. Yet, after the state rests its case, the court does not advise the defendant of the right to testify. This is not because courts do not value a defendant's right to testify. Surely a court would set aside a conviction if the defendant could show that the reason for failure to testify at trial was that the defendant was ignorant of the right to testify. Why, then, when the right to testify at trial is comparable to the right to speak at a sentencing hearing, is there no analogue to allocution in the former situation?

The answer is history. Allocution was first provided in a context quite different from modern criminal proceedings.

[S]ince the common law judge generally had no discretion as to the quantum of punishment in felony cases, the point of his question to the defendant was not to elicit mitigating evidence or a plea for leniency, but to give the defendant a formal opportunity to present one of the strictly defined legal reasons which required the avoidance or delay of sentencing: he was not the person convicted, he had benefit of clergy or a pardon, he was insane, or if a woman, she was pregnant. [Footnotes omitted.]

Note, *supra*, 81 Harv.L.Rev. at 832–33. "[T]he right of allocution arose at a time when many crimes were punishable by death and when the defendant had no right to be represented by counsel or even to testify on his own behalf * * *." 3 W. LaFave & J. Israel, *Criminal Procedure* § 25.1(f), at 118 (1984). *See McGautha v.*

*California,* 402 U.S. 183, 217–18, 91 S.Ct. 1454, 1472–73, 28 L.Ed.2d 711 (1971). Of course, since the defendant had no right to counsel and was not permitted to testify at trial, the court had no reason to presume that the defendant would know of the right to speak at sentencing unless the judge so advised.

In the present day, allocution still serves three purposes: (1) it informs defendants (presumably those not represented by counsel) who would otherwise not know of the right, that they have the right to speak before imposition of sentence; (2) it creates a record to avoid future questions about whether the defendant was aware of the right to speak; and (3) it may encourage defendants to speak by suggesting that the judge really cares, really wants to hear from the defendant. These are useful purposes, but they do not raise allocution to the level of a basic right for defendants represented by counsel. If allocution is a basic right, then a defendant also has a basic right to be advised by the court of every other right that may prove similarly useful at trial—not only the right of a defendant to testify, but the right to object to hearsay, the right to exclude witnesses from the courtroom before they testify, etc. The ancient provenance of a right does not make it "basic."

The weight of authority also suggests that allocution is not essential to fairness for a defendant represented by counsel. In *State v. Stenz,* 109 N.M. 536, 540, 787 P.2d 455, 459 (Ct.App.1990), we noted the absence of reported decisions granting defendants in misdemeanor cases the right to allocution in the absence of a statute or rule. *But see State in Interest of A.H.,* 115 N.J.Super. 268, 272, 279 A.2d 133, 135 (1971) ("fundamental fairness compels the allowance of allocution" to a juvenile who has been adjudicated delinquent); *In re Virgil M.,* 46 Md.App. 654, 421 A.2d 105 (1980) (juvenile's right of allocution). In *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), the Supreme Court stated that the failure of a judge to ask a defendant represented by counsel whether he wished to say anything before imposition of sentence was neither

constitutional error nor "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure."

This authority does not disparage the importance of a defendant's, or child's, address to the court before imposition of sentence or disposition. As Justice Frankfurter wrote, "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States,* 365 U.S. at 304, 81 S.Ct. at 655. Yet, Justice Frankfurter joined in the Supreme Court's opinion in *Hill.* The United States Supreme Court has distinguished, as should this court, between the importance of the defendant's statement and the lesser value of the court's advising a defendant represented by counsel of the right to speak.

## WHAT ADULT RIGHTS ARE AVAILABLE TO CHILDREN UNDER SECTION 32–1–27(A)?

Moreover, even if allocution were a "basic right," it is not a right afforded all adults. An adult convicted of a felony has the right to allocution. *See Tomlinson v. State,* 98 N.M. 213, 647 P.2d 415 (1982). An adult convicted of a misdemeanor does not. *See State v. Stenz.*

Thus, it is not immediately apparent whether allocution would be provided under Section 32–1–27(A), which states that a child is "entitled to the same basic rights as an adult." What "adult" is the statute referring to—a felon or a misdemeanant? The statute must mean "the same basic rights as an adult *in a comparable circumstance.*"

What features of the proceeding against the child should be used to determine whether the "comparable" proceeding against an adult is one that resulted in a felony conviction? The majority looks to the maximum period for which a delinquent child can be committed to state custody— two years—and concludes that the analogous adult proceeding must be one leading to a felony conviction, because an adult can

be imprisoned for two years only if convicted of a felony. This approach has some appeal, but it ignores the fact that the consequences—both in terms of the decrease in freedom and later collateral penalties—are substantially less for a child adjudicated delinquent than for a convicted felon.

More importantly, the Children's Code itself emits a strong signal regarding what criterion is to be used to compare a children's court proceeding to an adult proceeding. The Code provides that a child's statutory right to a jury trial (children have no constitutional right to a jury trial, at least when the alleged misconduct would not constitute a felony if committed by an adult, *see State v. Doe*, 90 N.M. 776, 568 P.2d 612 (Ct.App.1977)) depends on the nature of the misconduct with which the child is charged. The child has a right to a jury only if the alleged delinquent acts "would be triable by jury if committed by an adult." NMSA 1978, § 32–1–31(A) (Repl. Pamp.1989). An adult is entitled to a jury trial if the offense carries a possible penalty in excess of six months. *See State v. Sanchez*, 109 N.M. 428, 786 P.2d 42 (1990). In other words, a child is not entitled to a jury trial if the alleged misconduct would be a petty misdemeanor if committed by an adult, *see State v. Benjamin C.*, 109 N.M. 67, 781 P.2d 795 (Ct.App.1989); *State v. Doe*, even though the potential penalty for a child is the same whether the misconduct would be a felony, a misdemeanor, a petty misdemeanor, or even *no offense at all* if committed by an adult.

An adult's right to trial by jury is no less precious than the right of allocution. The treatment by the Children's Code of the right to trial by jury implies that in determining what class of adults the delinquent child should be compared to in determining the rights of the child, the Children's Code looks to the nature of the misconduct committed by the child rather than to the disposition that could be imposed upon the child. Because the misconduct committed by the child in this case would not be a felony if committed by an adult, Section 32–1–27(A) would not entitle the child to allocution even if the right of allocution afforded a convicted felon were deemed a "basic" right.

GROUNDS FOR REVERSAL

Nevertheless, I would set aside the sentence in this case. Although the United States Supreme Court has not considered whether it is a "constitutional right," *see McGautha v. California*, 402 U.S. at 218, 91 S.Ct. at 1472, the right to address the court (either personally or through counsel) before pronouncement of the sentence or disposition should be deemed a "basic right" when life or liberty is at stake, except, perhaps, when the sentence or disposition is mandatory. *Cf. State v. Doe*, 90 N.M. 404, 564 P.2d 207 (Ct.App.1977) (court violated former statute by denying children's attorney an opportunity to be heard). That right apparently was violated in this case.

Unfortunately, the recording of the proceeding has vanished. From the rendition of facts upon which we must rely, however, it appears that, in substance, the children's court announced the disposition before the child or his counsel could have spoken on the issue. Later comment would be, as the children's court assured those present, "an empty gesture." *Tomlinson v. State*, 98 N.M. at 215, 647 P.2d at 417. In these circumstances, reversal is appropriate. We have more than just a failure of the court to advise a child who is represented by counsel of the child's rights. *See In re Doe*, 88 N.M. 481, 542 P.2d 61 (Ct.App. 1975).