This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36895**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**JOSE M. IBARRA,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Kea W. Riggs, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}** Defendant Jose Ibarra appeals his conviction for aggravated driving while under the influence (DWI), contrary to NMSA 1978, Section 66-8-102(D)(3) (2016). Defendant argues (1) the State failed to present sufficient evidence to sustain a conviction for aggravated DWI where (a) Defendant did not refuse testing under the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2019), or in the alternative, rescinded his refusal to take a chemical test, and (b) the State failed to prove impairment when Defendant's conviction was based on incorrectly given field

sobriety test (FST) instructions; and (2) he was denied due process when the State dismissed his case in magistrate court and refiled in district court, resulting in a denial of Defendant's request for a jury trial. We conclude (1) there was insufficient evidence to sustain an aggravated DWI conviction as Defendant rescinded his refusal to take a chemical test, pursuant to the factors in *In re Suazo*, 1994-NMSC-070, ¶ 24, 117 N.M. 785, 877 P.2d 1088; (2) sufficient evidence existed to support a simple DWI conviction under Section 66-8-102(A); and (3) Defendant was not entitled to a jury trial.

**DISCUSSION**

**I.      The State Failed to Present Sufficient Evidence to Sustain a Conviction of Aggravated DWI**

**{2}**      Defendant asserts that there was insufficient evidence to support his conviction for aggravated DWI premised on his alleged refusal to submit to chemical testing.[1] Specifically, Defendant contends that he did not refuse testing under the Implied Consent Act, and even if Defendant's "initial response [was] interpreted as a refusal, [Defendant] cured this misperception of a refusal immediately after Deputy Shannon explained he was interpreting [Defendant]'s actions as a refusal." We, therefore, review Defendant's conviction for aggravated DWI for sufficiency of the evidence and resolve "whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused." *State v. Garcia*, 2005-NMSC-007, ¶ 12, 138 N.M. 1, 116 P.3d 72.

**{3}**      Aggravated DWI "consists of . . . refusing to submit to chemical testing, as provided for in the Implied Consent Act, and in the judgment of the court, based upon evidence of intoxication presented to the court, the driver was under the influence of intoxicating liquor or drugs." Section 66-8-102(D)(3) (citations omitted). *In re Suazo* sets forth a five-factor test to be used when determining if a motorist properly rescinded his initial refusal to take a chemical test. 1994-NMSC-070, ¶ 24.

**{4}**      A motorist will be permitted to rescind his initial refusal:

> (1) when he does so before the elapse of the reasonable length of time it would take to understand the consequences of his refusal; (2) when such a test would still be accurate; (3) when testing equipment or facilities are still readily available; (4) when honoring a request for a test, following a prior first refusal, will result in no substantial inconvenience or expense to the police; and (5) when the individual requesting the test has been in police custody and under observation for the whole time since his arrest.

*Id.*

---

1Defendant also argues "the State did not present evidence regarding whether the officer was going to have [Defendant] take the breath test or the blood test[, and a] refusal to take a warrantless blood test cannot result in an aggravated DWI." We do not address this argument because we find there was insufficient evidence to sustain an aggravated DWI conviction on other grounds.

**{5}** The district court correctly found Defendant's "loud and belligerent conduct" to constitute refusal under the Implied Consent Act. *See Fugere v. State, Taxation & Revenue Dep't*, 1995-NMCA-040, ¶ 13, 120 N.M. 29, 897 P.2d 216 (citing a Commonwealth Court of Pennsylvania case for the determination that "anything less than unqualified assent to take a breath test constitutes a refusal"). However, we conclude that Defendant's reply, "I'm not denying any test, I'm not denying—," to Deputy Shannon's statement, "I consider your actions to be a refusal to be tested," in conjunction with Deputy Shannon then cutting Defendant off by shutting the police car door, were sufficient to rescind Defendant's initial refusal.

**{6}** In reaching this conclusion, we note that Defendant asserted he was not "denying any test" seconds after Deputy Shannon informed him that he was interpreting Defendant's behavior as a refusal. This falls squarely within the short time frame contemplated by the Court in the first *Suazo* factor. *See* 1994-NMSC-070, ¶ 26 (noting that "[t]he temporal standard . . . will always be a very short time, never more than a matter of minutes" in order to avoid an officer being "forced to coddle a person who has willfully brought himself to an unreasonable state of mind"). While we acknowledge that Defendant exhibited disruptive behavior for approximately four minutes while Deputy Shannon attempted to read him the Implied Consent Act, we conclude that this does not render his subsequent rescission ineffective. Our Supreme Court's analysis in *Suazo* supports this conclusion.

**{7}** In *Suazo*, the Court relied on a Minnesota Court of Appeals' opinion to demonstrate the pragmatic application of our rule for rescinding refusal. *Id.* ¶ 27 (relying on *Schultz v. Comm'r of Pub. Safety*, 447 N.W.2d 17 (Minn. Ct. App. 1989)). In the Minnesota case, the officer explained the implied consent advisory to the driver three times, the driver was then permitted to read the advisory, and the driver then refused the test. *In re Suazo*, 1994-NMSC-070, ¶ 27. It was not until the officer went to note the refusal on the implied consent form that the driver said, "Wait, I want to change that." *Id.* In that case, the officer refused to administer the test and the driver's license was revoked. *Id.* The Minnesota Court of Appeals reversed "noting that the driver's recantation 'was almost immediate.' " *Id.* While our Supreme Court noted that, "[s]trictly speaking, a change of mind after four presentations of the implied consent advisory is not 'almost immediate[,]' " the standard our Court adopted is "measured by the driver's reasonable ability to comprehend [the] situation." *Id.* Thus, according to the Court in *Suazo*, "[u]nder the New Mexico test, the defendant in *Schultz* would have recanted his refusal within a reasonable time." *Suazo*, 1994-NMSC-070, ¶ 27. Similarly, we conclude that Defendant's rescinding of his denial occurred within a reasonable period of time and satisfies the first *Suazo* factor.

**{8}** Furthermore, Defendant's recantation of his refusal also complies with the remaining *Suazo* factors. Deputy Shannon's entire interaction with Defendant involving the Implied Consent Act only lasted approximately four minutes. Given the relevant time frame, a chemical test would have still been accurate. Moreover, chemical testing following Defendant's rescinding of his refusal would not have resulted in any substantial inconvenience or expense for the police because Defendant had not left the

scene where he was pulled over and had been under police surveillance the entire time between his refusal and his recantation. *See id.* ¶ 24.

**{9}** The State argues that Defendant was required to make a request for a chemical test in order to properly rescind his refusal. While we acknowledge that the test set out in *Suazo* refers to a "request" in both factors (4) and (5), we need not decide whether Defendant was required to make a specific request for a chemical test following his assertion that he was not denying a test, as Defendant was not given *the opportunity* to make such a request. *See id.* As we noted above, Deputy Shannon shut the door to his police vehicle and transported Defendant to the Chavez County Sheriff's office to be processed, immediately after Defendant told Deputy Shannon he was not refusing a test. We also note that the recantation that occurred in *Schultz*, and on which the Court in *Suazo* heavily relied, did not contain language amounting to a specific request for a test. *Id.* ¶ 27 (discussing recantation in *Schultz* where the driver said, "Wait, I want to change that"). Thus, given that the rule in *Suazo* is intended to provide a motorist with "a fair chance to understand his or her rights[,]" *Id.* ¶ 25, and given that Defendant immediately responded to Deputy Shannon's characterization of Defendant's actions as a refusal, we conclude Defendant sufficiently rescinded his refusal under the *Suazo* factors and therefore did not refuse a chemical test under Section 66-8-102(D)(3). Accordingly, we conclude that there was insufficient evidence to support Defendant's conviction for aggravated DWI.

## II.     Sufficient Evidence Exists to Support a Simple DWI Conviction

**{10}** In light of this Court's determination that there was insufficient evidence to support an aggravated DWI conviction, we consider whether there was sufficient evidence to support a simple DWI conviction under Section 66-8-102(A). *See State v. Notah-Hunter*, 2005-NMCA-074, ¶¶ 21-22, 31, 137 N.M. 597, 113 P.3d 867 (holding that it is proper to reverse a conviction for per se aggravated DWI and remand the case for entry of judgment and sentence on a charge of simple DWI, because simple DWI is a lesser included offense of aggravated DWI under the "strict elements test" and, as such, "it would be impossible to ever commit the greater offense without also committing the lesser offense" (internal quotation marks and citation omitted)). Based on the facts discussed below, we conclude that there is sufficient evidence to support a conviction for simple DWI based on remand.

**{11}** As an initial matter, we note that Defendant argues the FST results were tainted and therefore could not support a DWI conviction because the "Deputy did not give the standardized instructions[; therefore,] the results of the field sobriety testing [have] been compromised and should not support a finding of impairment." Defendant fails to provide any case law in support of this proposition. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Rather, Defendant cites to a New Mexico case that seems to support the opposite conclusion. *See State v. Torres*, 1999-NMSC-010, ¶ 31, 127 N.M. 20, 976 P.2d 20 (stating "most of the field sobriety tests are self-explanatory" (internal quotation marks and citation omitted)). Nonetheless, there is

sufficient evidence of impairment to be derived from Defendant's behavior unconnected to Deputy Shannon's instructions to support a simple DWI conviction.

**{12}**     In the present case, Deputy Shannon witnessed Defendant drift into the adjacent turn lane twice before pulling him over. When Deputy Shannon approached Defendant's vehicle, he noticed a "heavy odor of [alcohol] intoxicants emitting [from] the driver window." Defendant initially denied drinking any alcohol that evening, but further into the stop he admitted to consuming an alcoholic beverage three hours prior. Deputy Shannon testified Defendant swayed heavily and frequently used his arms to maintain his balance during the walk-and-turn and one-leg stand test.

**{13}**     This Court has previously held that a similar factual basis was sufficient to support a simple DWI conviction. For instance, in *State v. Neal*, we held sufficient evidence supported a reasonable inference that the defendant was under the influence of alcohol because the defendant veered onto the shoulder three times, smelled of alcohol and had bloodshot and watery eyes, admitted to drinking, and showed signs of intoxication during the FSTs. 2008-NMCA-008, ¶ 29, 143 N.M. 341, 176 P.3d 330. Specifically, during the FSTs, the defendant swayed, failed to follow officer instructions, "lifted his arms away from his side during the one-leg stand test . . . failed to maintain the stance during the walk-and-turn test, and the officer believed [the d]efendant was under the influence of alcohol." *Id.* Evidence of Defendant's poor driving, a heavy odor of alcohol coming from the vehicle, Defendant's admission to having consumed alcohol, and Defendant swaying heavily during his performance on the FSTs provide sufficient evidence to support the conclusion that Defendant "was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public." UJI 14-4501(2) NMRA; *see Notah-Hunter*, 2005-NMCA-074, ¶ 24 (holding that evidence, including "[the d]efendant smelled of alcohol, had slurred speech, admitted to drinking alcohol, failed field sobriety tests, and was speeding while driving down the middle of the road[,]" was sufficient "to find [the d]efendant guilty of the lesser included offense of driving while intoxicated in violation of Section 66-8-102(A)"); *State v. Sanchez*, 2001-NMCA-109, ¶¶ 15-17, 131 N.M. 355, 36 P.3d 446 (concluding that a defendant's odor of alcohol, bloodshot and watery eyes, own admission of drinking, aggressive behavior, and demand to be taken to jail instead of taking a chemical test was sufficient evidence for a jury to find the defendant "was less able to the slightest degree to exercise the clear judgment necessary to handle a vehicle" (omissions, internal quotation marks, and citation omitted)); *State v. Gutierrez*, 1996-NMCA-001, ¶ 4, 121 N.M. 191, 909 P.2d 751 (affirming a DWI conviction where there was evidence that the defendant (1) "was weaving into other traffic lanes; (2) "narrowly missed hitting a truck"; (3) "smelled of alcohol and had bloodshot, watery eyes"; (4) "failed three field sobriety tests"; (5) "admitted drinking alcohol and smoking marijuana"; and (6) "the officers believed that [the d]efendant was intoxicated"). We, therefore, conclude that there is sufficient evidence to support entry of a simple DWI conviction on remand.

## III.     Defendant Did Not Have a Right to a Jury Trial

**{14}** Defendant argues he was improperly denied his right to a jury trial after the State dismissed his case in magistrate court, refiled it in the district court, and then dismissed without prejudice the count for driving on a suspended license, causing Defendant's potential sentence to drop below six months. Defendant contends that this was a violation of his right to due process because he was entitled to a jury trial while the case was pending in magistrate court, pursuant to Rule 6-602(A) NMRA (allowing either party to demand a jury trial for offenses punishable by no more than six months in jail), whereas a jury trial in district court is only provided in cases where the sentence would be more than six months. *See generally State v. Cannon*, 2014-NMCA-058, ¶¶ 10-19, 326 P.3d 485. Thus, Defendant contends the district court should have assessed the prosecutor's motivation in dismissing the case in magistrate court and refiling in district court. In addition, Defendant advocates for expanding the right to jury trial in New Mexico beyond cases that would result in a sentence in excess of six months. We review Defendant's argument that he was improperly denied the right to a jury trial for structural error because it was not preserved below. *See State v. Hobbs*, 2016-NMCA-006, ¶ 11, 363 P.3d 1259. "A structural error is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *State v. Nguyen*, 2008-NMCA-073, ¶ 9, 144 N.M. 197, 185 P.3d 368 (internal quotation marks and citation omitted). Structural error "infect[s] the entire trial process, and necessarily render[s] a trial fundamentally unfair. *State v. Rivera*, 2012-NMSC-003, ¶ 20, 268 P.3d 40 (internal quotation marks and citation omitted). Such errors are infrequent. *Id.*

**{15}** We begin by noting that a jury trial is only "constitutionally mandated when incarceration exceeds six months." *State v. Sanchez*, 1990-NMSC-012, ¶ 22, 109 N.M. 428, 786 P.2d 42. This Court has reached the same conclusion with respect to DWI cases. *See Cannon*, 2014-NMCA-058, ¶¶ 12, 20 (holding that "DWI, first offense, is not a serious offense for [the] purpose of a defendant's Sixth Amendment right to a jury trial" and concluding that the defendant was not entitled to a jury trial when charged with aggravated DWI "[g]iven that the maximum period of imprisonment [the d]efendant face[d was] less than six months"). Thus, after the State dismissed the driving on a suspended license charge, Defendant was not entitled to a jury trial because the remaining charges against him in district court did not amount to a potential sentence of six months or more. With respect to Defendant's request that this Court "expand[] the jury trial guarantee beyond the six-month test," we decline to deviate from the well-established case law on this issue.

**{16}** Furthermore, to the extent Defendant relies on *State v. Heinsen,* 2005-NMSC-035, 138 N.M. 441, 121 P.3d 1040, to argue that "the district court should have inquired into the reasons for the dismissal and refiling in district court," alleging that the district court "failed to supervise the prosecutor's discretion by failing to ensure [Defendant]'s due process rights were not unduly infringed[,]" Defendant's argument is unavailing. This Court has previously acknowledged that "[t]he [s]tate, through its prosecutors, has broad discretion in determining what charges to bring and whom to prosecute." *State v. Estrada*, 2001-NMCA-034, ¶ 10, 130 N.M. 358, 24 P.3d 793. Additionally, "New Mexico has long recognized that the [s]tate has wide discretion to dismiss a criminal case in magistrate court by filing a nolle prosequi and reinstating charges in district court."

*Heinsen*, 2005-NMSC-035, ¶ 25. To the extent Defendant relies on *Heinsen* to assert that the district court should have overseen the exercise of such discretion by inquiring into the State's reasons for dismissing in magistrate court and then refiling in district court, we note that New Mexico courts no longer conduct "good faith-bad faith" analyses to determine if a new six-month time period should apply when the State dismisses and refiles a case, *State v. Savedra*, 2010-NMSC-025, ¶ 8, 148 N.M. 301, 236 P.3d 20 (internal quotation marks omitted), and Defendant has provided no authority to support applying such an analysis in this context. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists.").

**{17}**    Accordingly, we conclude that Defendant's Sixth Amendment and due process rights were not violated when he was denied a jury trial.

**CONCLUSION**

**{18}**    Because there was insufficient evidence to support an aggravated DWI conviction, yet sufficient evidence to support a simple DWI conviction, we reverse the conviction for aggravated DWI and remand this case for entry of judgment and sentencing on a charge of simple DWI.

**{19}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JACQUELINE R. MEDINA, Judge**